**Donald CHUY**

v.

**NATIONAL FOOTBALL LEAGUE PLAYERS' ASSOCIATION.**

**Civ. A. No. 76–1589.**

United States District Court, E. D. Pennsylvania.

July 15, 1980.

Leonard Schaeffer, Philadelphia, Pa., for plaintiff.

Malcolm L. Lazin, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiff commenced this action alleging that the National Football League Players' Association (NFLPA) violated its duty of fair representation by refusing in bad faith to initiate and pursue his grievance against the Philadelphia Eagles Football Club (Eagles). Pending resolution of plaintiff's suit against the Eagles, this action was placed in civil suspense. That suit has now been resolved, *see Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir. 1979) (en banc), and this action has been reactivated. Defendant has moved for judgment on the pleadings.

Plaintiff alleges that he sustained an injury during a professional football game. He further alleges that the Eagles thereafter violated his contract by failing to pay him the amounts due under the contract. Although plaintiff requested the NFLPA to initiate a grievance on his behalf, defendant allegedly failed to do so. According to plaintiff, defendant acted in bad faith, maliciously, and in violation of the duty of fair representation. He thereafter sued his employer in federal court on a number of theories. *See Chuy v. Philadelphia Eagles Football Club, supra.* In this action he attempts to recover from the NFLPA the attorney's fees he incurred in the action against the Eagles. In plaintiff's view, these fees were incurred due to the NFLPA's breach of its duty of fair representation.

"In considering a motion for judgment on the pleadings, the trial court is required to view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." 5 Wright & Miller, *Federal Practice & Procedure* § 1368, at 690 (1969). Affidavits, depositions, and other submissions permitted by Rule 56 have not been

filed, and this motion has not been treated as one for summary judgment.

▉ Defendant advances a number of arguments in support of its motion. First of all, defendant states that an essential element of a suit under § 301 of the National Labor Relations Act is an allegation that a collective bargaining agreement has been breached. Although we agree with this statement, *see Leskiw v. Local 1470, IBEW*, 464 F.2d 721 (3d Cir.), *cert. denied*, 409 U.S. 1041, 93 S.Ct. 526, 34 L.Ed.2d 490 (1972), we find that plaintiff's complaint satisfies that requirement. Plaintiff alleges a contractual violation by his employer. Complaint ¶ 13. Although the contract involved was the standard players contract, we note that the collective bargaining agreement, exhibit A to plaintiff's complaint, refers to the standard players contract. *See* Art. I, § 2, Art. III, and Art. IX, § 1(a). This distinguishes *Local Union No. 67 v. Duquesne Brewing Co.*, 354 F.Supp. 1033 (W.D.Pa. 1973), in which the court found no mention in the collective bargaining agreement of individual contracts and therefore found no basis for incorporation by reference. In *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), the Supreme Court noted that an employee need not proceed against both his employer and his union in the same suit. We therefore deem it of no significance that the Eagles are not a party to this action.

▉ Defendant next relies upon plaintiff's failure to allege exhaustion of internal union remedies and to allege with particularity the facts in support of his conclusion that the defendant breached its duty. Although exhaustion of internal remedies is "a necessary requirement to a complaint against a union for breach of the duty of fair representation," *Goclowski v. Penn Central Transportation Co.*, 571 F.2d 747, 757 (3d Cir. 1977), it has been suggested that defendants seeking dismissal for failure to exhaust must come forward with facts establishing both the availability of internal remedies and plaintiff's failure to abide by them. *Dorn v. Meyers Parking System*, 395 F.Supp. 779 (E.D.Pa.1975).

Our review of the applicable case law suggests at a minimum that courts normally resolve this issue after examining affidavits on a motion for summary judgment. *See, e. g., Goclowski v. Penn Central Transportation Co., supra.* In the absence of such a record in this case, we believe that it would be premature to enter judgment in favor of defendant on this ground. For similar reasons we find defendant's argument regarding specific pleadings to be without merit. This is not a case like *Hubicki v. A.C.F. Industries, Inc.*, 484 F.2d 519 (3d Cir. 1973), in which plaintiff, even at the summary judgment stage, had failed to show a factual basis for his claim. The procedural posture of that case and the instant case are sufficiently different to cause us to decline to grant judgment in favor of defendant on the pleadings.

▉ Defendant argues further that the duty of fair representation does not apply in this case because it was not the exclusive bargaining representative of the players. Although the collective bargaining agreement does state that players will negotiate their own regular season pay, it specifies that "[t]he League recognizes the Association as the sole and exclusive collective bargaining representative of all the professional football players employed by the Member Clubs with respect to all terms and conditions of their employment except as otherwise specified in this Agreement." Art. I, § 1. Moreover, Art. IX, which regulates grievances, states that grievances apply to both the collective bargaining agreement and the standard players contracts.

Nonetheless, defendant's argument causes us some concern. This concern stems from the fact that although a union may be vested with exclusive authority to negotiate an agreement, it may not enjoy the status of exclusive enforcer of the agreement. *See* Summers, *"The Individual Employee's Rights Under the Collective Agreement: What Constitutes Fair Representation?"*, 126 *U.Pa.L.Rev.* 251, 254–56 (1977). The union's exclusive control over the processing and settlement of grievances, if it exists, is derived from the collective agree-

ment itself. *Id.* at 256. As Professor Summers has stated:

> By virtue of this contractually derived status as exclusive enforcer of the collective agreement, the union assumes a heavy responsibility to exercise its control on behalf of, rather than against the individual employee. The collective agreement creates rights in the individual employee which are enforceable under section 301. In the absence of a union controlled grievance procedure, the individual can sue and enforce his rights in his own behalf. The effect of the contractual provision giving the union exclusive control over the grievance procedure is to deprive the individual of his ability to enforce the contract on his own behalf. The union, having deprived the individual of his ability to enforce his rights, has a special obligation to act on his behalf.

*Id.* (footnotes omitted). The effect of this deprivation can be quite severe: in a case in which the union exercises control over the grievance procedure, and in which that procedure is not utilized for some reason, the employer faced with a § 301 suit by the employee can defend upon the theory that the employee failed to exhaust the grievance mechanism. *Vaca v. Sipes, supra,* 386 U.S. at 184, 87 S.Ct. at 913. In that case, the burden upon the employee is substantial: "[t]o prevail against either the company or the Union, [the employee] must not only show that [the contract was violated] but must also carry the burden of demonstrating breach of duty by the Union." *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 570, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976).

In the typical case, therefore, an employee allegedly damaged by the breach of a collective bargaining agreement by his employer must avail himself of the grievance/arbitration mechanism provided by the collective bargaining agreement itself. Those contractual remedies are usually, at least in the final stages, controlled by the union and employer. *Id.* at 564, 96 S.Ct. at 1056. Due to the power granted to the union by the contract, courts have applied a duty of fair representation to the union. Unless the union violates its duty, however, the employee cannot prevail in a § 301 suit against the employer, even though the employer may in fact have violated the agreement. Conversely, if the contract does not contemplate that the grievance/arbitration mechanism should be the exclusive remedy, a suit for breach of contract may be prosecuted even though the contractual remedies have not been exhausted. *Vaca v. Sipes, supra,* 386 U.S. at 184 n.9, 87 S.Ct. at 913 n.9.

The pleadings in this case reveal that plaintiff was not prevented from suing his employer on his contract claim. Not only was he able to sue, but he prevailed. *See Chuy v. Philadelphia Eagles Football Club, supra.* Therefore, the primary evil that the duty of fair representation was designed to prevent in this type of situation—namely, that an employee with a valid claim against his employer may be prevented from recovering due to his union's actions or inactions as exclusive enforcer of the contract—has not been realized. As best we can cull from the reported decisions in plaintiff's earlier action, his employer did not raise as a defense plaintiff's failure to exhaust the grievance procedure, and we express no opinion as to what merit, if any, that defense would have had in that case. It is clear, however, that nothing that the NFLPA did or failed to do prevented plaintiff from vindicating his contractual right. We are faced with the question whether under these circumstances plaintiff can prevail against the NFLPA for an alleged violation of its duty of fair representation.

Plaintiff does not, of course, attempt to recover from the NFLPA for the violation of the contract by the Eagles. He seeks instead the attorney's fees he incurred in the earlier suit. Awards of this nature have been sustained.[1] *See Scott v. Team-*

---

1. Although plaintiff proceeded against the Eagles on a number of theories, it would appear that only the attorney's fees attributable to plaintiff's contract claim against the Eagles would be recoverable in this action. Plaintiff has advanced no theory, for example, connecting his claim against the Eagles for the intentional infliction of emotional distress and the NFLPA's duty of fair representation.

sters *Local Union 377*, 548 F.2d 1244 (6th Cir.), *cert. denied*, 431 U.S. 968, 97 S.Ct. 2927, 53 L.Ed.2d 1064 (1977). In plaintiff's opinion, "a labor union, upon a request of an employee, must process the employee's grievance. This is for the obvious reason that a union has the funds and power that an individual employee does not possess. Obviously, the fact that Chuy was able to institute his own action against the Eagles does not affect his ability to bring the present action, because it was the Players' Association's responsibility to represent Chuy and bear all costs in his contractual grievance against the Philadelphia Eagles." Plaintiff's response to defendant's supplemental memorandum of law in support of their motion for judgment on the pleadings at 12. We cannot agree with the breadth of plaintiff's theory. The Agreement in this case imposes no obligation on the NFLPA to process all grievances. However, although the agreement permits an employee to initiate a grievance, at certain stages of the proceedings it appears that control of the grievance mechanism is vested exclusively in the NFLPA. *See* Art. IX, §§ 2 (step 3), 3(e). Therefore, we cannot hold that defendant was relieved of its duty of fair representation. A determination of whether defendant violated that duty will depend upon whether defendant's actions were "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes, supra*, 386 U.S. at 190, 87 S.Ct. at 916. Judging plaintiff's complaint by the standard applicable on a motion for judgment on the pleadings, we cannot say that defendant is entitled to judgment as a matter of law. If the NFLPA had processed plaintiff's grievance, it is possible that plaintiff would have been spared the cost of prosecuting his contract claim against his employer. If the NFLPA's failure to process the grievance was motivated by bad faith, a violation of the duty of fair representation would be made out, particularly since the NFLPA controls the later stages of the grievance procedures. Therefore, defendant's motion for judgment on the pleadings will be denied.