Norman E. **DUTRISAC,** Plaintiff,

and

Bill **Gamble,** Plaintiff/Appellee,

v.

**CATERPILLAR TRACTOR CO.,** Defendant,

and

**International Association of Machinists, District Lodge No. 115,** Defendant/Appellant.

No. 81–4251.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 9, 1982.

Decided July 19, 1983.

Norris, Circuit Judge, filed concurring opinion.

Thomas Titmus, Dodge, Reyes, Brorby, Randall & Titmus, Walnut Creek, Cal., for plaintiff/appellee.

Steven L. Stemerman, Davis, Cowell & Bowe, San Francisco, Cal., for defendant/appellant.

Before SCHROEDER, FLETCHER and NORRIS, Circuit Judges.

FLETCHER, Circuit Judge:

Bill Gamble was fired by Caterpillar Tractor Company, allegedly for excessive absenteeism. Gamble brought this action under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1976), charging that Caterpillar had fired him in violation of the collective bargaining agreement and that his union, the International Association of Machinists, District Lodge No. 115 (IAM), had breached its duty to represent him fairly in his attempt to gain reinstatement.

The district court granted summary judgment for Gamble on his fair representation claim against IAM. However, after a bench trial on the wrongful discharge claim, the court found that Caterpillar had fired Gamble for good cause and thus had not breached the collective bargaining agreement. Nevertheless, the court or-

dered IAM to pay the legal costs and attorney's fees of Gamble's section 301 action, as damages caused by IAM's breach of its duty of fair representation to Gamble. *Dutrisac v. Caterpillar Tractor Co.,* 511 F.Supp. 719 (N.D.Cal.1981). IAM appeals.

The facts are undisputed. After Caterpillar fired him on February 10, 1978, Gamble filed a grievance alleging that the discharge was racially motivated. In accordance with the collective bargaining agreement, IAM began processing Gamble's grievance at the "third step" of the grievance procedure. Union business representative Andrew Barnes represented Gamble at the third-step hearing. A few days later, Caterpillar notified Barnes that it had rejected the grievance. IAM had thirty days from receipt of this notification to request arbitration of the grievance.

Following the third-step hearing, Barnes asked Gamble several times to supply him with certain information that would help him in representing Gamble. Gamble never provided the information. It was IAM's practice to discuss all pending grievances at weekly union meetings and decide which grievances to take to arbitration. IAM discussed Gamble's grievance at one of these meetings and decided to submit the grievance to arbitration.

Barnes filed the request for arbitration of Gamble's grievance. Although Barnes believed he was filing within the thirty-day time limit, he actually filed the request two weeks late. The arbitrator ruled that the grievance was untimely and therefore not arbitrable.

It is undisputed that Barnes had no ill will towards Gamble and that his failure to file the grievance on time was an inadvertent omission. The record does not show that Gamble's failure to provide the information requested by Barnes had any effect on the union's delay in filing. In his deposition, Barnes stated that his method of keeping track of filing deadlines was to review each grievance file at least once a week. He did not explain why he missed the deadline in Gamble's case.

On appeal, IAM argues that, at most, its failure to make a timely request for arbitration amounted to negligence, and that merely negligent conduct does not breach the duty of fair representation. IAM also contends that any breach of the duty of fair representation did not prejudice Gamble because the district court found Gamble's underlying claim against the employer to be nonmeritorious. Finally, IAM contends that an award of attorney's fees is not a proper remedy for breach of the duty of fair representation.

I

The Standard of Care

■ To establish a breach of the union's duty of fair representation, an employee must show that the union's conduct towards him was "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). A union acts arbitrarily if it "ignore[s] a meritorious grievance or process[es] it in a perfunctory fashion." *Id.* at 191, 87 S.Ct. at 917. Although arbitrary conduct is not limited to acts intended to harm the employee, *Robesky v. Qantas Empire Airways, Ltd.,* 573 F.2d 1082, 1089 (9th Cir.1978), the standards for determining when an unintentional mistake by a union official should be considered "arbitrary" are still evolving. *See generally* Morgan, *Fair Is Foul, and Foul Is Fair —Ruzicka and the Duty of Fair Representation in the Circuit Courts,* 11 U.Tol.L. Rev. 335 (1980); Note, IBEW v. Foust: *A Hint of Negligence in the Duty of Fair Representation,* 32 Hastings L.J. 1041 (1981).

In *Robesky,* we stated that an unintentional mistake is arbitrary if it reflects a "reckless disregard" for the rights of the individual employee, but not if it reflects only "simple negligence violating the tort standard of due care." 573 F.2d at 1089–90; *accord, Tenorio v. NLRB,* 680 F.2d 598, 601 (9th Cir.1982). "Reckless disregard" and "simple negligence," however, are merely labels. In deciding whether the facts of a particular case constitute a

breach of the duty, it is more instructive to compare the types of unintentional errors in union grievance processing that usually are held to breach the duty of fair representation with those usually held not to breach the duty.

Most of the decisions finding "simple negligence" insufficient to establish a breach of the duty involve alleged errors in the union's evaluation of the merits of a grievance, *see, e.g., Singer v. Flying Tiger Line, Inc.,* 652 F.2d 1349, 1355 (9th Cir. 1981), in its interpretation of the collective bargaining agreement, *see, e.g., Ethier v. United States Postal Service,* 590 F.2d 733, 736 (8th Cir.), *cert. denied,* 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979), or in its decisions concerning presentation of the grievance at the arbitration hearing, *see, e.g., Ness v. Safeway Stores, Inc.,* 598 F.2d 558, 560 (9th Cir.1979); *Price v. Southern Pacific Transportation Co.,* 586 F.2d 750, 751, 754 (9th Cir.1978). When the challenged conduct is not an erroneous decision by the union but its failure to perform a ministerial act required to carry out the decision, courts have been more willing to impose liability for merely negligent conduct. *See* Morgan, *supra,* at 341–42; Note, *supra,* at 1055–69.

■ For example, in *Robesky,* the union failed to tell Robesky that it would not take her grievance to arbitration. Because this omission led Robesky to reject an offer of settlement that she would otherwise have accepted, we held that the union had breached its duty to her. 573 F.2d at 1091. Other courts have found a breach when the union decided to file a grievance but failed to file it in a timely fashion, or negligently allowed the filing deadline to pass without evaluating the merits of the grievance. *See, e.g., Foust v. IBEW,* 572 F.2d 710, 715 (10th Cir.1978), *rev'd on other grounds,*

442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979); *Ruzicka v. General Motors Corp.,* 523 F.2d 306, 309–10 (6th Cir.1975) (*Ruzicka I*);[1] *Ruggirello v. Ford Motor Co.,* 411 F.Supp. 758, 760–61 (E.D.Mich.1976). *But see Hoffman v. Lonza, Inc.,* 658 F.2d 519, 522 (7th Cir.1981). As the district court in this case stated: "[a] reckless disregard for the rights of plaintiff [is] found, as in *Robesky,* because union officials had full knowledge of the situation that the notice to arbitrate had to be filed within 30 days, and had ample opportunity to timely file their notice, but failed to do so." 511 F.Supp. at 727 (citing *Robesky,* 573 F.2d at 1090, 1091). We conclude that the union should be responsible for a total failure to act that is unexplained and unexcused. *See Ruzicka,* 523 F.2d at 316 (6th Cir.1975) (McCree, J., concurring).

■ The collective bargaining system necessarily subordinates the interests of an individual employee to the collective interests of all employees in the bargaining unit. *See Vaca,* 386 U.S. at 182, 87 S.Ct. at 912. Because the union must balance many collective and individual interests when it decides whether and to what extent to pursue a particular grievance, courts should accord substantial deference to the union's decisions. *See Rupe v. Spector Freight Systems, Inc.,* 679 F.2d 685, 691 (7th Cir.1982). To hold the union liable for mere errors of judgment in processing grievances would defeat the employees' collective interest in having a strong and effective union.

When the challenged conduct, however, is based not on any decision about how to handle the grievance, but on the failure to perform ministerial acts, judicial deference to the union serves no purpose. A requirement that the union timely pursue those grievances it has decided to pursue does

---

1. IAM asserts that in *Ruzicka v. General Motors Corp.,* 649 F.2d 1207 (6th Cir.1981) (*Ruzicka II*), the Sixth Circuit modified its opinion in *Ruzicka I.* We disagree with this interpretation of *Ruzicka II,* for the reasons cogently stated in Judge Cudahy's concurring opinion in *Hoffman v. Lonza, Inc.,* 658 F.2d 519, 525 n. 5 (7th Cir. 1981).

IAM also relies on *Ruzicka II* to argue that a delay in requesting arbitration does not breach the duty of fair representation if the union delays in reliance on a past practice of loose enforcement of the contractual time limits. This argument does not help IAM because there is no evidence of reliance by IAM on any such practice.

not interfere with union decision making. IAM contends, however, that such a requirement will undermine the discretion of unions to evaluate the merits of grievances because it will force unions to shorten the time they spend investigating grievances before deciding whether to file them. No legitimate interest is served by ignoring the filing deadline merely because it does not happen to coincide with the completion of the union's investigation. If the collective bargaining agreement does not allow enough time for investigation, the union can negotiate to lengthen the contractual time for filing grievances or to provide for extensions of time in particular cases.

IAM also argues that imposing liability in this case has no deterrent value because a union is unable to foresee or prevent acts of negligence by its stewards and business agents. We are not persuaded that unions are powerless to make their agents observe the contractual time limits more carefully. Nor are we persuaded by IAM's argument that union stewards and business agents should not be expected to observe time limits faithfully because they are untrained lay people. Keeping track of deadlines is a mechanical function that depends on establishing a tickler system and diligence in using it, not on special training. *See Bowen v. United States Postal Service,* 459 U.S. 212, 103 S.Ct. 588, 597–98 & n. 16, 74 L.Ed.2d 402 (1983).

■ Nevertheless, we recognize that any broadening of the duty of fair representation may encourage an increase in fair representation suits that would weaken the financial stability of unions. A weakening of unions' financial stability might, in turn, impair their ability to function effectively as collective bargaining agents. *See IBEW v. Foust,* 442 U.S. 42, 50–51, 99 S.Ct. 2121,

2126–2127, 60 L.Ed.2d 698 (1979). For this reason, we limit our holding that union negligence may breach the duty of fair representation to cases in which the individual interest at stake is strong and the union's failure to perform a ministerial act completely extinguishes the employee's right to pursue his claim.

Here, the individual interest is strong because the grievance concerns a discharge, the most serious sanction an employer can impose. *Tenorio v. NLRB,* 680 F.2d 598, 602 (9th Cir.1982). As the district court noted, the collective bargaining agreement provides that only the union can file for arbitration of a grievance; the employee himself cannot file. 511 F.Supp. at 728. Thus, IAM's failure to meet the deadline completely cut off Gamble's resort to the mandatory grievance procedure, which was the only remedy for his discharge.[2] We therefore hold that IAM's conduct was arbitrary and could constitute a breach of its duty of fair representation to Gamble.

## II

### Prejudice

■ To obtain judicial review of a breach-of-contract claim against an employer, an employee must first either exhaust the contractual grievance procedures or prove that the union's breach of its duty of fair representation prevented him from exhausting those procedures. *Vaca,* 386 U.S. at 184–85, 87 S.Ct. at 913–914. In this case, the district court's decision that IAM had breached its duty to Gamble enabled Gamble to go forward on his claim against Caterpillar. However, the district court decided in favor of Caterpillar on the merits

---

2. In both *Stephens v. Postmaster General,* 623 F.2d 594 (9th Cir.1980), and *Dente v. International Organization of Masters Local 90,* 492 F.2d 10 (9th Cir.1973), *cert. denied,* 417 U.S. 910, 94 S.Ct. 2607, 41 L.Ed.2d 214 (1974), we found that a negligent delay in processing a grievance did not breach the duty of fair representation. These cases are distinguishable from the present case because there the union's negligence did not completely cut off the employee's claim. In

*Stephens,* the employee himself could have filed the grievance. The employee had notice of the filing deadline, but chose to ignore it in reliance on erroneous advice from his union steward. 623 F.2d at 595. In *Dente,* the union's delay in arbitrating the grievance merely resulted in a delay in reinstating the employee; it did not prevent his reinstatement entirely. 492 F.2d at 11.

of Gamble's breach-of-contract claim. That decision is not appealed.

■ IAM argues that any breach of its duty of fair representation did not prejudice Gamble because the district court found Gamble's underlying claim against Caterpillar to be without merit. Indeed, we agree and would find that there was no breach of IAM's duty of fair representation were the claim so meritless as to be frivolous for there is no duty to represent a member in respect to a frivolous claim. *See Stanton v. Delta Air Lines, Inc.*, 669 F.2d 833, 838 (1st Cir.1982). However, rejection of the claim by the district court does not necessarily mean that the arbitrator would have rejected it had IAM timely submitted it to arbitration. Courts and labor arbitrators do not always consider the same factors when deciding whether a contract has been breached. *See United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596–97, 80 S.Ct. 1358, 1360–1361, 4 L.Ed.2d 1424 (1960). Moreover, a less than ironclad grievance may be settled. *Robesky*, 573 F.2d at 1085. If IAM had not extinguished Gamble's right to pursue his claim, the employer might have offered to settle it before arbitration. Thus, only if Gamble's claim on the merits was frivolous could we conclude that the extinguishment of the right to pursue the claim did not prejudice him.

The union's own conduct belies that characterization. After the third step grievance proceeding, the union informally sought to have Gamble rehired and after an "in depth" discussion by union officials, determined to submit the grievance to arbitration. 511 F.Supp. at 722. The union would not have done so if it did not think Gamble's claim had at least potential merit. We conclude that although the claim ultimately was unsuccessful, it was not frivolous.

## III

### The Remedy

The district court reasoned that IAM's failure to represent Gamble fairly in the arbitration proceeding had forced Gamble to hire a lawyer in order to obtain the representation that IAM should have provided. Therefore, the court ordered as a remedy that IAM pay $2000 in attorney's fees that Gamble incurred in seeking a fair resolution of his claims against Caterpillar.

IAM argues that it was improper to award any attorney's fees in this case. It contends that the attorney's fee award violates the traditional American rule that the prevailing litigant may not ordinarily recover attorney's fees unless authorized by statute or contract. *See Summit Valley Industries v. Local 112, United Brotherhood of Carpenters*, 456 U.S. 717, 102 S.Ct. 2112, 72 L.Ed.2d 511 (1982); *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 257, 95 S.Ct. 1612, 1616, 1621, 44 L.Ed.2d 141 (1975). IAM points out that section 301, under which this action was brought, does not provide for attorney's fees, *Seattle Times Co. v. Seattle Mailer's Union*, 664 F.2d 1366, 1370 (9th Cir.1982), nor is there any contractual provision authorizing the attorney's fee award.

■ One of the primary purposes of the American rule is to avoid penalizing the losing party merely because the party chose to defend or prosecute a lawsuit. *Summit Valley*, 102 S.Ct. at 2116. Consistent with this policy, an exception to the American rule cannot be justified solely on the ground that a losing defendant's wrongful conduct forced the plaintiff to resort to litigation. *Id.* Here, however, the expense Gamble incurred in obtaining legal representation in the district court in his contractual grievance against Caterpillar is not merely a result of the harm that IAM did him; it is the harm itself.[3] The

---

**3.** The district court characterized the award as "a fair and reasonable amount to cover the expenses, including attorneys' fees and costs, incurred by plaintiff in seeking a fair resolution of his claim against Caterpillar." 511 F.Supp. 719, 729. An award that included Gamble's expenses in prosecuting his claim against IAM would raise different issues. It, indeed, would penalize IAM for litigating the issue of whether it breached its duty of fair representation and

essence of Gamble's claim against IAM is that IAM wrongfully failed to represent him in his grievance against Caterpillar. Requiring IAM to pay Gamble's expenses in providing for himself the representation against Caterpillar that IAM failed to provide does not penalize IAM for choosing to defend this lawsuit, as Gamble would have incurred attorney's fees in prosecuting his claim against Caterpillar even if IAM had conceded that it breached its duty of fair representation. Thus, the $2,000 assessed against IAM represented damages, not attorney's fees per se, and does not violate the American rule. *See Stanton v. Delta Air Lines, Inc.,* 669 F.2d 833, 838 (1st Cir.1982); *Self v. Drivers Local 61,* 620 F.2d 439, 444 (4th Cir.1980); *Scott v. Local 377, International Brotherhood of Teamsters,* 548 F.2d 1244, 1246 (6th Cir.), *cert. denied,* 431 U.S. 968, 97 S.Ct. 2927, 53 L.Ed.2d 1064 (1977); *Chuy v. National Football League Players' Association,* 495 F.Supp. 137, 140–41 (E.D.Pa.1980).[4] We conclude the award of damages was proper.

AFFIRMED.

NORRIS, Circuit Judge, concurring:

I concur because I believe the majority is correct in treating the 'disposition of this case as controlled by *Robesky v. Qantas Empire Airways,* 573 F.2d 1082 (9th Cir. 1978). I do so reluctantly, however, be-

cause I believe that in holding a union liable for an unexplained procedural failure in processing an employee's grievance, we signify that ordinary negligence may constitute a breach of a union's duty of fair representation under the doctrine of *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967).

I agree with Judge Kennedy in his concurring opinion in *Robesky* that the root of the problem is traceable to the Supreme Court's use of the imprecise term "arbitrary" in defining a standard of care for union representation. *Vaca v. Sipes,* 386 U.S. 171, 191, 87 S.Ct. 903, 917, 17 L.Ed.2d 842 (1967). As Judge Kennedy pointedly observed:

The standards imposed here, however, are not clear. I suggest the difficulty stems from use of the term "arbitrary" to define a standard of care, when instead it should describe the standard we apply on reviewing the adequacy of the procedures followed by the union in the processing and resolution of grievances. The court attempts to define the term "arbitrary" by using tort law concepts of culpability. As such the term apparently proscribes conduct not involving bad faith, *see Beriault v. Local 40, Super Cargoes and Checkers,* 501 F.2d 258 (9th Cir.1974), but which is more blameworthy than ordinary negligence. *Dente v. International Organization of Mas-*

---

would be improper unless it fell within the common benefit exception. *See Miller-Wohl Co. v. Commissioner of Labor & Industry,* 694 F.2d 203, 204 (9th Cir.1982); *Lewis v. Anderson,* 692 F.2d 1267, 1270 (9th Cir.1982). In *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), the Supreme Court applied the common benefit exception to an award of attorney's fees to a union member who successfully sued his union for violation of his free speech rights guaranteed by section 101(a)(2) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411(a)(2). *See also Rollison v. Hotel & Motel Employees Local 879,* 677 F.2d 741 (9th Cir.1982). The Court stated that "by vindicating his own right of free speech ... [the plaintiff] necessarily rendered a substantial service to his union as an institution and to all of its members.... [R]eimbursement of [the plaintiff's] attorney's fees out of the union treasury simply shifts the costs of litigation to 'the class that

benefited from them and that would have had to pay them had it brought the suit.'" 412 U.S. at 8–9, 93 S.Ct. at 1947–1948. We do not reach that issue today.

4. IAM also argues that we should reverse the award of attorney's fees because the district court failed to explain how it arrived at the amount of $2000. *See Higgins v. Harden,* 644 F.2d 1348, 1352–53 (9th Cir.1981); *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 69–70 (9th Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). IAM, however, does not challenge the reasonableness of the amount awarded, nor does IAM assert that the district court's failure to articulate a basis for the amount prevents IAM from challenging the amount. We decline to reverse the award in the absence of any suggestion that IAM was prejudiced by the court's failure to explain the amount.

ters, Mates and Pilots, Local 90, 492 F.2d 10, 12 (9th Cir.1973), cert. denied, 417 U.S. 910, 94 S.Ct. 2607, 41 L.Ed.2d 214 (1974). Neither the law of torts nor precedents in the federal common law of labor relations provide adequate guidance to define the term "arbitrary" in this manner.

Robesky, 573 F.2d at 1091–92.

I fear that the confusion spawned by Vaca v. Sipes was compounded by our court in Robesky. There the possibility of a breach of duty occurred because the union failed to disclose to an employee information critical to her interests. 573 F.2d at 1085 & n. 4, 1087. The district court found, however, that this failure occurred subsequent to the union's decision "to withhold the information" and that Robesky "was kept in ignorance ... because of a deliberate decision by Union officials and not through oversight." Id. at 1088 (emphasis added). On that record, our court held that the trier of fact could find the union's conduct "arbitrary" in that it "was without rational basis or was reckless and extremely prejudicial." Id. at 1091.

The facts of the case now before us are markedly different. The record here reflects nothing more than the unexplained missing of a deadline. Nevertheless, because the majority in Robesky appears to conclude that, even without a finding that the union intentionally withheld critical information, the union could have breached its duty, see id. at 1089 & n. 15, I feel that Robesky, however flawed it may be, controls the disposition of this case. The law of the Ninth Circuit now seems to be that simple negligence may be enough to breach a union's duty of fair representation, notwithstanding Robesky's explicit disclaimer to the contrary. Id. at 1089.