Peter VATTIAT, Plaintiff,

v.

U.S. WEST COMMUNICATIONS, INC., a foreign corporation; et al., Defendants.

No. 99–1535–JO.

United States District Court, D. Oregon.

Nov. 16, 2001.

David J. Hollander, Hollander Lebenbaum & Gannicott, Elden M. Rosenthal, Rosenthal & Greene, Portland, OR, for Plaintiff.

Calvin L. Keith, David P.R. Symes, Perkins Coie, Portland, OR, Chuck D. Henson, U.S. West, Inc., Denver, CO, Kevin N. Keaney, Portland, OR, Richard Rosenblatt, Richard Rosenblatt & Associates, Greenwood Village, CO, Susan J. Tyburski, Boyle & Tyburski, Denver, CO, for Defendants.

## OPINION AND ORDER

JONES, District Judge.

In this "hybrid" section 301/Breach of Duty of Fair Representation ("DFR") case,[1] plaintiff Peter Vattiat seeks partial summary judgment against defendants U.S. West Communications, Inc. ("US West") and Communications Workers of America ("Union") (## 173, 175), and each defendant seeks full or partial summary judgment against plaintiff (## 182, 186).

Although the present motions were set for oral argument, after a thorough review of the parties' submissions, I find that oral argument would not be helpful. For the reasons explained below, I deny plaintiff's motions, grant in part and deny in part the Union's motion, and grant U.S. West's motion.

## THE PRESENT MOTIONS

The parties are familiar with the factual background of this case and I will not repeat it here. With the issue of the existence of the "secret agreement" resolved by jury verdict, the parties now seek summary judgment or partial summary judgment on the following issues:

1. *Plaintiff's Motions for Partial Summary Judgment*

   a. *Re: US West (Breach of Contract Claim)*

Plaintiff seeks partial summary judgment against U.S. West on liability for breach of contract, on one of two theories. Plaintiff seeks a ruling that U.S. West either (1) breached the Collective Bargaining Agreement ("CBA") by terminating him for other than "just cause" under the terms of the CBA, or; (2) breached the return to work agreement ("reinstatement agreement") by terminating him for other

---

1. Although all parties seemed to agree to the characterization of this action as "hybrid" in earlier proceedings, now that calculation of damages is an issue, the Union disputes that the action is "hybrid." *See* discussion of the Union's motion below.

than the reasons set forth in that agreement.[2]

### b. *Re: Union (Duty of Fair Representation Claim)*

Plaintiff seeks partial summary judgment on liability against the Union on the issue of whether the Union breached its duty to fairly represent him. This motion relies on the jury verdict concerning the secret agreement.

### 2. *Union's Motion for Summary Judgment or Partial Summary Judgment*

The Union seeks summary judgment on plaintiff's Duty of Fair Representation ("DFR") claim, arguing that:

a. The Union vice president and negotiator, Sue Pisha, did not believe that the reinstatement agreement included any condition precedent, and her "misinterpretation" of the contract will not sustain a DFR claim;

b. It was not outside the "wide range of reasonableness" for Pisha to conclude that there was no condition precedent to plaintiff's reinstatement, consequently it was not "irrational" for her to fail to inform plaintiff that such a condition existed;[3]

c. Because it appeared fairly certain that Clow would agree not to return to U.S. West, the Union acted reasonably in not informing plaintiff of the secret agreement; and

d. Even if plaintiff demonstrated that the Union's conduct was arbitrary or in bad faith, he cannot show that "his strong interests were prejudiced."

The Union alternatively seeks partial summary judgment against plaintiff on the issue of damages. The Union proposes that plaintiff's damages in the DFR claim should be restricted the to wages and benefits he would have received from Pavelcomm[4] had he not quit that job to return to U.S. West in March 1998, minus any amounts he earned during that time and subject to a mitigation defense. The Union further contends that damages should be limited to the period from March 5, 1998, when U.S. West terminated plaintiff the second time, to November 2, 1998, when he returned to Pavelcomm. The Union also contends that plaintiff is not entitled to recover attorney fees as damages under the circumstances of this case.

### 3. *US West's Motion for Summary Judgment*

US West seeks summary judgment against plaintiff on his breach of contract claim. US West contends that the failure of the condition precedent (*i.e.,* Gordon Clow decided to return to work) excused U.S. West's performance of the reinstatement agreement.

US West proposes that plaintiff's present "contrived" theory that U.S. West somehow breached the CBA ignores the Clow contingency, its impact on enforceability of the reinstatement agreement, and this court's prior rulings on the issue. US West further contends that regardless of whether plaintiff knew of the Clow con-

---

**2.** Under the reinstatement agreement, plaintiff could be terminated only for violation of any Company rule, policy, or code, or any failure to meet any standards or expectations in performance, attendance, punctuality, or quality. *See* Plaintiff's Trial Exhibit 1.

**3.** According to the Union, the jury's determination that the secret agreement existed "is

not relevant to this inquiry." Union's Brief in Support (Revised), p. 9. That theory is explored later in this opinion.

**4.** Plaintiff went to work for Pavelcomm after U.S. West terminated his employment the first time.

tingency, as between plaintiff and U.S. West, plaintiff is bound by it.

## STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge,* 865 F.2d 1539, 1542 (9th Cir.1989).

The substantive law governing a claim determines whether a fact is material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. *T.W. Elec. Service,* 809 F.2d at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. *Id.* at 630–31.

## DISCUSSION

1. *Plaintiff v. Union*

The question framed by plaintiff's and the Union's cross-motions is whether the evidence establishes that the Union's conduct in negotiating the Clow contingency and failing to inform plaintiff of its existence was or was not, as a matter of law, a breach of the duty of fair representation.

The Union alternatively seeks an order limiting plaintiff's damages on the DFR claim.

A. *Liability*

1. *Standards*

■ Plaintiff and the Union generally agree on the analytical standards applicable to the Union's conduct. In general, a union has a duty to represent fairly all employees subject to a CBA. *See, e.g., Air Line Pilots Ass'n, Intern. v. O'Neill,* 499 U.S. 65, 74, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991). In fulfilling that duty, a union must refrain from conduct that is "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

■ A union's conduct is arbitrary "only if it lacks a rational basis," *Stevens v. Moore Business Forms, Inc.,* 18 F.3d 1443, 1447 (9th Cir.1994), or is so far outside a " 'wide range of reasonableness' * * * as to be irrational." *Air Line Pilots,* 499 U.S. at 67, 111 S.Ct. 1127 (citation omitted). Bad faith requires a showing of fraud, deceitful action, or dishonest action. *See Mock v. T.G. & Y. Stores Co.,* 971 F.2d 522, 531 (10th Cir.1992).[5]

■ If the conduct at issue involved the Union's judgment, then the Union cannot be found to have acted "arbitrarily." *See Marino v. Writers Guild of America East, Inc.,* 992 F.2d 1480, 1486 (9th Cir. 1993). Courts are not to "substitute their judgment for that of the union, even if, with the benefit of hindsight, it appears that the union could have made a better call." *Ooley v. Schwitzer Div., Household Mfg. Inc.,* 961 F.2d 1293, 1302 (7th Cir. 1992); *see also Marino,* 992 F.2d at 1486 ("if the conduct involved the union's judg-

---

5. There is no allegation of discriminatory con-

duct in this case.

ment, then 'the plaintiff may prevail only if the union's conduct was discriminatory or in bad faith' " (citation omitted)).

■ Simple negligence on the part of a union is not enough to sustain a DFR claim. *Scott v. Machinists Automotive Trades D. Lodge 190,* 827 F.2d 589, 593 (9th Cir.1987); *Robesky v. Qantas Empire Airways Ltd.,* 573 F.2d 1082, 1089 (9th Cir.1978). Nonetheless, a union's acts of omission not intended to harm union members "may be so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary." *Robesky,* 573 F.2d at 1089–90. According to *Robesky,* unintentional acts or omissions by union officials may be arbitrary if

> they reflect reckless disregard for the rights of the individual employee, * * * they severely prejudice the injured employee, * * * and the policies underlying the duty of fair representation would not be served by shielding the union from liability in the circumstances of the particular case * * *.

573 F.2d at 1090 (citations omitted).

■ Plaintiff must not only establish that the Union's conduct was arbitrary, discriminatory or in bad faith, but also that the Union's conduct "prejudice[d] a strong interest" of his. *Galindo v. Stoody Co.,* 793 F.2d 1502, 1514 (9th Cir.1986).

### 2. *Factual Arguments*

In a factual argument plaintiff characterizes as "admirable in its audacity." Plaintiff's Consolidated Reply, p. 7, the Union proposes that it is entitled to summary judgment on plaintiff's DFR claim for the following reasons:

a. Union Vice President Pisha "did not believe that the Vattiat agreement included [the Clow] condition precedent"; *i.e.,* Pisha interpreted the agreement as not including the Clow contingency. Union's Brief in Support (Revised), p. 8. Because "interpretation" is an exercise of judgment, her mistaken belief cannot support a DFR claim.

b. Even if Pisha's interpretation *"could be found arbitrary,* Pisha's conduct cannot be found arbitrary here" because her behavior was not so far outside the wide range of reasonableness as to be irrational. Union's Brief in Support (Revised), pp. 8–9 (emphasis in original).

c. Pisha did not act in bad faith in keeping the Clow contingency secret from plaintiff because she did not believe any such condition existed.

d. In any event, because it appeared that Clow would retire, it was not unreasonable for the Union not to inform plaintiff of the contingency.

e. Finally, plaintiff cannot show that his strong interests were prejudiced.

With respect to (a) through (c) above, the Union is correct, in a general sense, that a union's exercise of judgment and interpretation of contracts ordinarily are not subject to second-guessing by courts. On the other hand, in rendering its verdict, the jury necessarily found that there was a meeting of the minds between Pisha on behalf of the Union and U.S. West's representatives. The jury was instructed that

> In order for you to find that U.S. West and the union contractually agreed that Mr. Vattiat would return to work only if Mr. Clow did not return to work, you must find that both parties demonstrated agreement to this condition by word and deed.

*Vattiat v. U.S. West, et al,* No. CV 99–1535–JO, Jury Instruction No. 17. In its verdict, the jury found that

> defendant U.S. West and defendant Communication Workers of America entered into a contractual agreement in

which plaintiff Vattiat would return to work with defendant U.S. West only if Gordon Clow did not return to work with defendant U.S. West[.]

*Id.,* Verdict.

■ The Union argues that this court may disregard the jury's finding of mutual assent as "not relevant" to the present inquiry because "[t]he fact that subsequent to Pisha's conduct a neutral decision maker interpreted the agreement differently than Pisha proves nothing except that Pisha's interpretation was in error," and therefore not arbitrary. Union's Brief in Support (Revised), p. 9 (*citing Spellacy v. Airline Pilots Ass'n–Intern.,* 156 F.3d 120, 127 (2nd Cir.1998)). *Spellacy* involved a dispute over interpretation of certain provisions of the Pilots Working Agreement, the collective bargaining agreement between Pan Am and its pilots. In agreeing with the union's position that "its interpretation does not have to be right[, i]t need only be plausible," the court stated that "[t]o uphold the union's action in interpreting the contract as it did it is not necessary that we find on the merits that such an interpretation was correct." 156 F.3d at 127.

The Union latches onto the above statements from *Spellacy,* but the circumstances of the two cases are markedly dissimilar. *Spellacy* involved the interpretation of written contract language; the dispute in the earlier trial phase of this case was over whether Pisha did or did not enter into a secret agreement. The jury verdict on that issue forecloses the Union's present argument, that despite having agreed to the "secret" linkage of plaintiff's return to work with Clow's agreement to retire, Pisha nonetheless reasonably interpreted plaintiff's reinstatement agreement as not *contingent* on Clow's agreement to not return to work. The Union's argument is not plausible and is rejected.

Nevertheless, I conclude that whether the Union's conduct rose to the level of "arbitrary" or "bad faith" is an issue that should be submitted to the jury, especially considering that judicial review of union actions must be "highly deferential, recognizing the wide latitude that [unions] need for the effective performance of their bargaining responsibilities." *Spellacy,* 156 F.3d at 126 (citations and internal quotations omitted).

I also conclude that the issue of whether plaintiff's "strong interests were prejudiced" should be submitted to the jury. According to the Union, plaintiff had no legitimate interest in employment with U.S. West given that his earlier termination had been upheld in arbitration, and because (according to the Union) "he would have been fired * * * because of the restraining order which prohibited him from entering [US West's] central offices." Union's Brief in Support (Revised), p. 13. Plaintiff, in turn, argues that he had a strong interest in being employed *somewhere,* be it Pavelcomm or U.S. West, which interest was prejudiced by the Union's failure to reveal the secret contingency to his return to work agreement. I decline to resolve the issue of prejudice on the present record: Whether a "strong interest" of plaintiff was prejudiced by the Union's conduct is an issue uniquely suitable for jury determination.

### B. *Damages*

The Union also seeks partial summary judgment on the formula for calculating plaintiff's damages on the DFR claim. This portion of the Union's motion focuses on plaintiff's claim for damages based on the wages and benefits he would have received *from U.S. West* had he not been terminated on March 5, 1998 (the second termination), and on his claim for attorney fees.

### 1. *Wages and Benefits*

The Union proposes that "the correct formula for calculating damages are the wages and benefits that [plaintiff] would have received from Pavelcomm had he not quit that job to return to U.S. West in March, 1998." Union's Brief in Support (Revised), pp. 17–18. The Union also proposes that damages should be limited to the period from March 5, 1998, when U.S. West terminated him, through November 2, 1998, when he returned to Pavelcomm, as diminished by any interim earnings or by any failure on plaintiff's part to mitigate.

Plaintiff does not address this portion of the Union's argument. Instead, he expressly declines to take any position as to how damages should be apportioned between the two defendants, contending only that the correct measure of damages "would be to make [him] whole." Plaintiff's Consolidated Reply, p. 17 and n. 2.

As a general proposition, "a union is liable to an employee for compensatory damages flowing from the union's conduct." *Galindo, supra,* 793 F.2d at 1516 (*citing Bowen v. United States Postal Service,* 459 U.S. 212, 224–31, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983), and *Vaca v. Sipes,* 386 U.S. at 196–98, 87 S.Ct. 903). "[D]amages for duty of fair representation suits are intended to make the plaintiff whole * * *." *Galindo,* 793 F.2d at 1517.

The real issue in this case is one of causation. With respect to his DFR claim, plaintiff is entitled to only those damages that "flow" or are fairly attributable to the Union's conduct. Plaintiff has testified that if the Union had informed him of the Clow contingency (*i.e.,* under his theory, had the Union fairly represented him), he would not have signed the reinstatement agreement. Declaration of Peter Vattiat, ¶ 6. Without the reinstatement agreement, he had no right to return to U.S. West and presumably would have remained at Pavelcomm. Consequently, under the peculiar circumstances of this case, I conclude that plaintiff's damages, if any, that flow from the Union's conduct do not include U.S. West lost wages and benefits. The Union's motion is granted in this respect.

### 2. *Attorney Fees*

As part of his damages, plaintiff seeks attorney fees for "the services of an attorney in order to place himself in the position he would have been in had the Union discharged its duty to fairly represent him." Complaint, ¶ 21. The Union argues that as a matter of law, attorney fees are not available in this case.

The analysis of this portion of the Union's motion begins with the general rule that attorney fees are not ordinarily recoverable by the prevailing party unless authorized by contract or statute. *Zuniga v. United Can Co.,* 812 F.2d 443, 455 (9th Cir.1987); *Dutrisac v. Caterpillar Tractor Co.,* 749 F.2d 1270, 1275 (9th Cir.1983). In "hybrid" section 301/DFR suits, however, the Ninth Circuit and other circuits hold that when an employer has breached its labor agreement and the union fails in its duty of fair representation, the worker may recover as compensatory damages against the union the attorney's fees he or she reasonably incurred to press the claim against the employer. *See Zuniga, supra,* 812 F.2d at 454–55; *see also Bennett v. Local Union No. 66,* 958 F.2d 1429, 1439–40 (7th Cir.1992)(citing cases). In *Bennett,* the court explained that

The reasoning * * * is straightforward and persuasive: "When there is a legal duty to provide representation, whether that duty arises out of a contractual undertaking or, as here, by operation of law, if the representation is wrongfully

withheld, the cost of substitute representation should be recoverable damages."

958 F.2d at 1440 (citation omitted).

■■■■ The attorney fees are not awarded as a penalty, but as consequential damages for the union's failure to provide representation. *Dutrisac,* 749 F.2d at 1275 (expenses worker incurred in obtaining legal representation in his contract action against employer is not merely a result of the harm the union did him, "it is the harm itself"). Courts limit attorney fees awarded as damages in hybrid claims to the expenses the employee incurred in pursuing the claim against the employer only, and not the claim against the union. *Bennett,* 958 F.2d at 1440 (*citing Dutrisac,* 749 F.2d at 1275 and n. 3); *see also Zuniga,* 812 F.2d at 453 (award of damages that includes the employee's expense in prosecuting claim against the union itself is improper because award would penalize the union for defending itself).

Thus, plaintiff's right to recover attorney fees depends on whether this is a "hybrid" section 301/DFR case. The Union argues that it is not; conversely, plaintiff argues that it is. "Hybrid" suits involve two potential suits—"a suit against the employer for breach of the collective bargaining agreement under section 301 and a suit against the union for breach of the duty of fair representation under the NLRA." *Moore v. Local Union 569 of the IBEW,* 989 F.2d 1534, 1541 n. 2 (9th Cir. 1993). The two claims in such cases are "inextricably intertwined":

> To prevail against either the company or the Union, ... [the employee] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union.

*DelCostello v. International Broth. of Teamsters,* 462 U.S. 151, 164–65, 103 S.Ct.

2281, 76 L.Ed.2d 476 (1983)(internal quotations and citation omitted). The employee may sue one defendant and not the other, "but the case he must prove is the same whether he sues one, the other or both." *Id.* at 165, 103 S.Ct. 2281.

The Union contends that plaintiff's action is not hybrid (and, therefore, that he is not entitled to recover attorney fees as damages) because his claim against the Union is "totally unrelated to any contract breach," but concerns only the Union's failure to inform him of all the terms of his reinstatement agreement. Union's Brief in Support (Revised), p. 21. Thus, the Union contends that prosecution of the DFR claim does not require prosecution of any claim against the employer.

Plaintiff, of course, insists that the case is hybrid. His explanation of the case is as follows:

> [P]laintiff was required to hire counsel because CWA breached its duty of Fair Representation by entering into the secret Clow contingency. Plaintiff filed this case because [US West] refused to arbitrate the breach of contract claim. [US West] refused to arbitrate because of the Clow contingency. Plaintiff was required to actually try before a jury the existence of the Clow contingency in order to reach this point in the litigation where the parties are finally focusing on plaintiff's breach of contract claim. Like the situation in *Dutrisac,* plaintiff has been required to hire counsel because of his union's violation of the Duty of Fair Representation.

Plaintiff's Consolidated Reply, p. 18. Under his view, the two claims are, indeed, inextricably intertwined.

In his complaint, plaintiff alleged that the Union breached its duty of fair representation by failing to timely process his grievance and by failing to timely seek to

compel arbitration. Those allegations are typical of a hybrid case. In the earlier summary judgment proceedings. I determined that rather than being time-barred, as U.S. West alleged, plaintiff's claims based on the Union's handling of grievance and arbitration proceedings had not yet accrued. Since then, the focus of this case has been on the secret agreement, with plaintiff's allegations concerning the Union's handling of his grievance and pursuit of arbitration having been more or less abandoned. Thus, in certain respects the Union is correct that plaintiff's DFR claim no longer is intertwined with his breach of contract claim.

Moreover, I am troubled by the language from *DelCostello*, quoted earlier, that states that to prevail in a hybrid claim against either the employer or the union, the employee "must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union." *DelCostello*, 462 U.S. at 165, 103 S.Ct. 2281. There is no question that this case is different than many hybrid cases. In a typical hybrid case, the plaintiff is, in fact, an employee covered by a CBA. The alleged breach of the CBA forms the basis of the employee's claim against the employer, and the union's alleged failure to fairly represent the employee against the employer forms the basis of the DFR claim. The present case bears little similarity to that scenario.

Despite that concern, I am presently inclined to agree with plaintiff that he may recover his attorney fees incurred in pursuing U.S. West, even though, as discussed below, he cannot prevail on that claim. *See Dutrisac*, 749 F.2d at 1275–76. Consequently, I deny that portion of the Union's motion at this juncture, but may be convinced to revisit the issue at trial if appropriately raised.

II. *Plaintiff v. U.S. West*

Turning to plaintiff's and U.S. West's cross-motions, plaintiff seeks a ruling to the effect that the Clow contingency is irrelevant to his breach of contract claim against U.S. West. Plaintiff offers two alternative theories in support of his present position. First, he contends that because he was not a party to and did not know about the Clow contingency, the contingency is not enforceable as to him. Under this theory, once he went back to work for U.S. West, he could be terminated only for the reasons set forth in the reinstatement agreement.

Alternatively, plaintiff argues that even if the Clow contingency was a condition precedent to U.S. West's obligation to return him to work, that contingency "went out of the equation" on the day U.S. West put him back to work. Plaintiff's Consolidated Reply, p. 5. Under this theory, plaintiff could be terminated only for "good cause" within the terms of the CBA.

Under either or both theories, plaintiff seeks summary judgment against U.S. West on the issue of liability for breach of contract.

In its own motion for summary judgment and in response to plaintiff's motion, U.S. West correctly observes the following: (1) plaintiff never really alleges in his complaint that U.S. West breached a contract; (2) throughout all earlier proceedings in this case, the "centerpiece" has been the existence or nonexistence of the Clow contingency; and (3) all of the court's earlier rulings in this case recognize that if in fact plaintiff's reinstatement was contingent on Clow's agreement to retire, then U.S. West's performance was excused.

US West also contends that notwithstanding the secrecy of the Clow contingency, because the Union negotiated the

conditions of plaintiff's reinstatement in its official role as his exclusive bargaining agent, he is bound by the negotiated terms. US West further points out that plaintiff has produced no evidence that U.S. West knew or had reason to know that the Union never informed plaintiff of the Clow contingency or colluded with the Union to keep it secret.

Turning to U.S. West's first argument, that plaintiff cannot simply ignore earlier proceedings in this case, I am troubled by plaintiff's current argument. During the entire course of proceedings to date, plaintiff has never advanced the position he now takes, that his return to work nullified the Clow contingency and/or the reinstatement agreement. To accept that theory would require the court to ignore the following excerpts from opinions and orders entered in this case:

> From the September 7, 2000, Opinion and Order on the Union's motion to compel arbitration:

> If, as U.S. West contends, Clow's agreement to retire was a condition precedent to Vattiat's reinstatement, then *Clow's return to work would indeed excuse U.S. West's performance* and arbitration would be inappropriate. If, as the union defendants contend, Vattiat's reinstatement agreement stands on its own and there were no secret contingencies, then arbitration is appropriate.

(Emphasis added.) From the December 27, 2000, Opinion and Order on the Union's and U.S. West's motions for summary judgment:

> [T]here is a fact question concerning the existence of the so-called "Clow contingency," and * * * until that fact issue is resolved, I cannot determine if U.S. West has agreed to and is required to arbitrate plaintiff's grievance. Until that issue is resolved, it is not possible to determine whether plaintiff's and the

Union's continued, albeit somewhat lackadaisical, persistence in pressing the grievance procedure was or was not "futile."

And from the October 26, 2000, minute order that set the one-day bench trial on the existence of the secret agreement (a procedure to which all parties objected):

> [T]he court will hold a one-day bench trial limited to the issue of the existence of the "secret agreement," solely for the purpose of *determining whether U.S. West agreed to arbitrate plaintiff's grievance; i.e., whether U.S. West is bound by the reinstatement agreement.*

(Emphasis added.)

In view of the above, the "law of the case," at least in the absence of proof that U.S. West waived the condition precedent, is that the failure of the Clow contingency excused U.S. West's performance of the reinstatement agreement, *i.e.,* performance of its agreement to return plaintiff to work. Because plaintiff's right to return to U.S. West's employment was only by virtue of the reinstatement agreement, the fact that he returned to work for a few days before U.S. West learned of Clow's intent to also return to work did not vest him with the status of a regular employee in good standing under the CBA.

■ With respect to U.S. West's second main argument, that plaintiff cannot ignore the conditions of his reinstatement simply because he did know all the terms, U.S. West points out that under the National Labor Relations Act, the Union acts as the "exclusive" bargaining agent for all represented employees in negotiating the terms and conditions of employment. *See* 29 U.S.C. § 159(a); *N.L.R.B. v. Allis–Chalmers Mfg. Co.,* 388 U.S. 175, 183, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967). Moreover, it is a specific violation of federal law for an employer to bargain directly with a

represented employee. *Standard Fittings Co. v. N.L.R.B.*, 845 F.2d 1311, 1318 n. 9 (5th Cir.1988).

■ A union has wide authority to bind union members to terms and conditions of employment, including the negotiation of contract provisions relating to individual members. *See, e.g., Van Leeuwen v. United States Postal Service*, 628 F.2d 1093 (8th Cir.1980)(union allowed to negotiate probationary treatment of individual members). Even when a member disagrees with union decisions, the union member is bound by agreements negotiated on his or her behalf. *N.L.R.B. v. Allis–Chalmers*, 388 U.S. at 180, 87 S.Ct. 2001 ("only the union may contract the employee's terms and conditions of employment * * *. The employee may disagree with many of the union decisions but is bound by them").

■ The Ninth Circuit recognizes that an employer is entitled to rely in good faith on a union's actions and representations " 'that are not obviously outside the scope of its authority.' " *Rozay's Transfer v. Local Freight Drivers, L. 208*, 850 F.2d 1321, 1330 (9th Cir.1988) (citations omitted). It appears that as a general proposition, if an employer relies in good faith on a union's representations that are not obviously outside the scope of its authority, then employer cannot be held liable to the employee unless it violates the terms of the CBA. *See, e.g., Frenza v. Sheet Metal Workers' Int'l Ass'n*, 567 F.Supp. 580, 587 (E.D.Mich.1983)(where employer bargains in good faith with the duly recognized exclusive bargaining representative, "the employer cannot be liable under any theory unless the employer violates the executed collective bargaining agreement").

■ US West points out that plaintiff has not alleged, much less proved, that U.S. West knew that the Union had failed to inform plaintiff of the Clow contingency, or that U.S. West participated in any effort to keep it secret. Further, plaintiff has not presented any evidence from which the court may reasonably infer that U.S. West did not bargain in "good faith" with the Union representative.

In his response to U.S. West's argument, plaintiff maintains that the Clow contingency is not enforceable as to him because it was concealed. Although plaintiff agrees generally that union members are bound to the contracts negotiated by their union, he relies on *Merk v. Jewel Food Stores*, 945 F.2d 889 (7th Cir.1991), for the proposition that courts are not inclined to enforce secret oral agreements. In *Merk*, however, the union and the employer "explicitly collaborated" to keep an oral term of the CBA secret from the union membership, a very different scenario than that presented here. *Merk*, 945 F.2d at 896–97.

Plaintiff also suggests, by citing the case, that *N.L.R.B. v. Local 282, Intern. Broth. of Teamsters*, 740 F.2d 141 (2nd Cir.1984), supports the proposition that "courts have been reluctant to enforce the secret agreements against union members." Plaintiff's Consolidated Reply, p. 13. Plaintiff's reliance on *N.L.R.B.*, however, is misplaced. *N.L.R.B.* concerns the circumstances under which a *union* may be held liable for breach of the duty of fair representation. It does not concern when an agreement between a union and an employer is or is not enforceable by the employer against a union member.

Plaintiff also insists that because U.S. West allowed him to return to work despite failure of the condition precedent, he "necessarily returned to work under the terms of the CBA." Plaintiff's Consolidated Reply, p. 16. Thus, plaintiff contends that his return to work stripped U.S. West of any right to rely on the Clow contingency. Notably, however, plaintiff has not argued

or attempted to prove that U.S. West "waived" the condition precedent, *i.e.*, that U.S. West voluntarily relinquished a known right, and given that he returned to work before U.S. West learned that Clow also planned to return to work, plaintiff cannot demonstrate waiver.

I also note that in its reply memorandum, U.S. West makes a significant argument that defeats the possibility of sending plaintiff's breach of contract claim to arbitration. US West explains that even if I accept plaintiff's theory that he became subject to the CBA as soon as he returned to work, his discharge after four days would be subject to Sections 16.19(e), 17.3, and 17.4(a) of the CBA. Section 16.19(e) specifies that disciplinary actions involving employees with less than one year of employment "shall not be arbitrable." Declaration of DeAnna Simmons, Exhibit A, p. 1. Under Sections 17.3 and 17.4(a) of the CBA, plaintiff's dismissal "shall be handled in accordance with Article 16" of the CBA. Simmons Declaration, Exhibit A, pp. 2 and 3. The effect of those provisions, taken together, is that an employee with less than one year of service may be terminated essentially "at will," without resort to arbitration.

In summary, I conclude that plaintiff has no viable claim for breach of contract against U.S. West. Consequently, U.S. West's motion for summary judgment is granted and plaintiff's motion for partial summary judgment against U.S. West is denied.

## CONCLUSION

Plaintiff's motions for partial summary judgment (## 173 and 175) are DENIED. US West's motion for summary judgment (# 182) is GRANTED and U.S. West is dismissed from this action. The Union's motion for summary judgment (# 186) is DENIED with respect to liability, and GRANTED IN PART and DENIED IN PART with respect to damages as set forth in this opinion.