669 F.2d 833
 109 L.R.R.M. (BNA) 2739, 93 Lab.Cas. P 13,215
 John STANTON, Plaintiff, Appellant,
v.
DELTA AIR LINES, INC., et al., Defendants, Appellees.
John STANTON, Plaintiff, Appellee,
v.
DELTA AIR LINES, INC., et al., Defendants, Appellees.
Air Line Pilots Association, International, Defendant, Appellant.
John STANTON, Plaintiff, Appellee,
v.
DELTA AIR LINES, INC., Defendant, Appellant,
and
Air Line Pilots Association, International, et al.,
Defendants, Appellees.
 Nos. 81-1345, 81-1366 and 81-1376.
 United States Court of Appeals,
First Circuit.
 Argued Oct. 5, 1981.
Decided Jan. 25, 1982.
 
 Robert L. Sheketoff, Boston, Mass., with whom Zalkind & Zalkind, Boston, Mass., was on brief, for John Stanton.
 Robert S. Harkey, Atlanta, Ga., with whom Leslie P. Klemperer, Atlanta, Ga., and Robert Fulton, Boston, Mass., were on brief, for Delta Air Lines, Inc.
 James W. Tello, Washington, D. C., with whom Gary Green, Washington, D. C., was on brief, for Air Line Pilots Ass'n, Intern.
 Before COFFIN, Chief Judge, BREYER, Circuit Judge, and BONSAL,* Senior District Judge.
 BREYER, Circuit Judge.
 
 
 1
 This case involves a question of appropriate procedural remedy after a court has found that a union failed to represent a member fairly on a matter subject to grievance arbitration under the Railway Labor Act (as extended to air carriers).[1] The member, appellant John Stanton, initially sought arbitration of a grievance. The arbitration panel refused to consider his grievance on the ground that Stanton's arbitration request was too late. Stanton then brought a federal district court proceeding against both employer and union. The court found that the union's breach of the duty of fair representation it owed Stanton caused the lateness problem. As a remedy, the court, while retaining jurisdiction of Stanton's case, ordered the matter returned to the arbitration panel for consideration of the merits of the grievance. The panel decided against Stanton on the merits. Stanton now appeals the court's remedial decision, arguing inter alia that the court, not the arbitration panel, ought to have considered his grievance on its merits. We disagree and affirm the decision of the district court.
 
 
 2
 * Stanton is a pilot. In 1973, he worked for Delta Air Lines and was a member of a union, the Air Line Pilots Association ("ALPA"). In July 1973 he was arrested and charged with marijuana-related crimes. Because of his arrest, he stopped flying. He was tried and acquitted in 1975. After the acquittal Delta was willing to take Stanton back to work, but Stanton and Delta were unable to agree about whether Stanton should receive back pay and other benefits for the period after his arrest when he was not working.[2]
 
 
 3
 The disagreement centered on the proper characterization, under the collective bargaining contract, of the period during which Stanton was out of work. Delta claimed that Stanton had taken a "personal leave." Under the contract, a "personal leave" is voluntary; when a pilot on personal leave returns to work, he does not receive back wages or disability benefits for injuries suffered in the interim. Stanton claimed that his leave amounted to a company-imposed suspension which under the contract is a "holding out of service." If so, Stanton is entitled to back pay and benefits. Although Stanton wrote a letter clearly requesting a "personal leave," he argued that he wrote this letter only because the company threatened to fire him if he did not do so. He added that Delta promised him it would reinstate him with back pay and benefits if he was acquitted. He stated that, had he only known at the time about the "back pay" consequences of requesting a "personal leave," he would never have requested one, or, having done so, he would immediately have filed a grievance charging Delta with coercion. Finally, Stanton pointed out that, after requesting personal leave from Delta, he had consulted with union officials, who, in his view, ought to have advised him immediately to file a grievance.
 
 
 4
 The matter finally came before the Delta Air Lines System Board of Adjustment ("System Board") for a decision on the merits, after the Board had first held the application untimely and the lower court had returned the case to the Board upon finding that the untimeliness was caused by the union's breach. The System Board rejected appellant's claims of coercion and misrepresentation.[3] It relied on credited testimony of other airline officials that no threats had been made and on appellant's own testimony that his action in requesting a leave was voluntary. The Board also noted the absence of evidence of any special understanding as to back pay and benefits. And, it concluded that the preponderance of the evidence was against a reasonable belief in any such entitlement. Appellant now claims that the remand to the Board was improper and that the court should have decided the merits of the grievance.[4]
 
 II
 
 5
 The Supreme Court has held that "(t)he appropriate remedy for a breach of a union's duty of fair representation must vary with the circumstances of the particular breach." Vaca v. Sipes, 386 U.S. 171, 195, 87 S.Ct. 903, 919, 17 L.Ed.2d 842 (1967). In particular, "an order compelling arbitration should be viewed as one of the available remedies when a breach of the union's duty is proved." Id. at 196, 87 S.Ct. at 920. The sole issue here is whether the district judge appropriately ordered that remedy in this case.
 
 
 6
 There are strong reasons militating in favor of a remand for arbitration in a case such as this one. The courts have consistently favored grievance arbitration as a decentralized, informal method for settling industrial disputes. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960); Sear v. Cadillac Automobile Co. of Boston, 654 F.2d 4, 7 (1st Cir. 1981). Indeed, "grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409 (1960). The policy favoring arbitration extends with particular force to arbitration by "system boards of adjustment." As we have previously explained in De La Rosa Sanchez v. Eastern Airlines, Inc., 574 F.2d 29, 31-32 (1st Cir. 1978), these boards are created by the Railway Labor Act "for the resolution of disputes between an air carrier and its employees.... (T)hey are the 'mandatory, exclusive and comprehensive system for resolving grievance disputes.' Brotherhood of Locomotive Engineers v. Louisville & Nashville Railroad Co., 373 U.S. 33, 38 (83 S.Ct. 1059, 1062, 10 L.Ed.2d 172) (1963)." Ordinarily, courts do not even have "jurisdiction over the merits of any employment dispute subject to determination by a system board of adjustment. Andrews v. Louisville & Nashville Railroad Co., 406 U.S. 320 (92 S.Ct. 1562, 32 L.Ed.2d 95) (1972)." Id. at 32. See also Air Line Pilots Association v. Eastern Air Lines, Inc., 632 F.2d 1321, 1323 (5th Cir. 1980). There is, of course, an exception (invoked here) allowing a court jurisdiction to determine whether a union has represented the employee properly. Czosek v. O'Mara, 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970) (Railway Labor Act); Glover v. St. Louis-San Francisco Railway Co., 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969) (Railway Labor Act). Cf. Vaca v. Sipes, supra. But, given the strong pro-arbitration policies of the Railway Labor Act, this exception must be interpreted narrowly. Cf. Sear v. Cadillac Automobile Co. of Boston, 654 F.2d at 7. Thus, the burden here rests on those opposed to arbitration as a remedy to demonstrate why it is unsuitable.
 
 
 7
 This burden has quite clearly not been met. The arbitration system at issue here did not previously "fail" in any sense. Rather, it had simply not considered Stanton's grievance on the merits. There is no reason to believe it could not deal with that grievance effectively, once the relevant procedural obstacle was removed. Indeed, the subject matter of the grievance-the meaning of terms in the contract, and the existence of "pressure" or "misrepresentation"-involves in part an understanding of the ordinary expectations of the work place; it is thus particularly well suited for grievance arbitrators. See Goclowski v. Penn Central Transportation Co., 571 F.2d 747, 755 (3d Cir. 1977).
 
 
 8
 Most important, the union, which failed to represent Stanton properly, was not itself involved in the pressure or the misrepresentation about which Stanton complained. The union's fault in this case refers exclusively to the timeliness of Stanton's recourse to the grievance system. Cf. Czosek v. O'Mara, 397 U.S. at 29-30, 90 S.Ct. at 773-74. Indeed, Stanton agrees that the union was not approached until after he had requested leave from Delta. Thus, in this case, unlike Glover v. St. Louis-San Francisco Railway Co., supra, union and employer were not together involved in the creation of the employee's basic grievance. See Raus v. Brotherhood of Railway Carmen of United States & Canada, 663 F.2d 791 et seq. (8th Cir. 1981); Richins v. Southern Pacific Co., 620 F.2d 761, 762 (10th Cir.), cert. denied, 449 U.S. 1110, 101 S.Ct. 918, 66 L.Ed.2d 838 (1981); Price v. Southern Pacific Transportation Co., 586 F.2d 750, 752 (9th Cir. 1978). Cf. Bagnall v. Air Line Pilots Ass'n, 626 F.2d 336, 342-44 (4th Cir.), cert. denied, 449 U.S. 1125, 101 S.Ct. 943, 67 L.Ed.2d 112 (1981); Williams v. Pacific Maritime Ass'n, 617 F.2d 1321, 1327-28, n.13 (9th Cir.), cert. denied, 449 U.S. 1001, 101 S.Ct. 896, 66 L.Ed.2d 827 (1981); Carroll v. Brotherhood of Railroad Trainmen, 417 F.2d 1025, 1027 (1st Cir.), cert. denied, 397 U.S. 1039, 90 S.Ct. 1359, 25 L.Ed.2d 650 (1970). There is no basis for saying that for the employee to look to arbitration to remedy a grievance would be "wholly futile." Glover v. St. Louis-San Francisco Railway Co., 393 U.S. at 330, 89 S.Ct. at 551.
 
 
 9
 While these considerations suggest remand was proper, appellant Stanton makes three arguments to the contrary. First, he claims that the two company-designated representatives on the System Board when it made its initial procedural decision were individuals who previously had been personally involved in handling Stanton's case. This fact, Stanton argues, destroys the Board's "impartiality," see Wells v. Southern Airways, Inc., 517 F.2d 132, 134 (5th Cir.), cert. denied, 425 U.S. 914, 96 S.Ct. 1512, 47 L.Ed.2d 765, 425 U.S. 1000, 96 S.Ct. 2217, 48 L.Ed.2d 824 (1976), deprives the process of a "minimum" level of "integrity," cf. Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 567, 96 S.Ct. 1048, 1057-58, 47 L.Ed.2d 231 (1976), and amounts to "repudiation" by the employer of the whole grievance arbitration process, see Vaca v. Sipes, 386 U.S. at 185, 87 S.Ct. at 914.
 
 
 10
 We do not accept this argument. Since a system board, unlike an administrative agency or a court, is deliberately made up of employer and union representatives designedly familiar with the work place,[5] appellant's "fair process" argument is not quite so telling as he claims. Cf. Union Pacific Railroad Co. v. Sheehan, 439 U.S. 89, 99 S.Ct. 399, 58 L.Ed.2d 354 (1979); United Steelworkers of America v. Union Railroad Co., 648 F.2d 905, 911-12 (3d Cir. 1981); Arnold v. United Air Lines, Inc., 296 F.2d 191, 195 (7th Cir. 1961). Regardless, we need not decide the point, for the court reversed the procedural decision of the allegedly biased Board, it sent the case back for a decision on the merits to a newly constituted Board, and the "biased" representatives were not members of this new Board.
 
 
 11
 As to the repudiation question, Stanton's case is even weaker. Unlike the typical arbitration procedure under the Labor Management Relations Act, 29 U.S.C. §§ 151 et seq., the arbitration boards created by the Railway Labor Act are not voluntarily created by contracting parties, but they are bodies mandated by law. Compare Nolde Brothers, Inc. v. Bakery & Confectionery Workers Union, 430 U.S. 243, 250-51, 97 S.Ct. 1067, 1071, 51 L.Ed.2d 300 (1977), and United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. at 582, 80 S.Ct. at 1352-53 et seq., with International Association of Machinists v. Central Airlines, Inc., 372 U.S. 682, 686, 83 S.Ct. 956, 959, 10 L.Ed.2d 67 (1963). Thus, whether this type of arbitration can be "repudiated" is uncertain. But even if Delta had the legal power to repudiate the arbitration, its appointment of the two allegedly "biased" representatives to the initial Board does not amount to a repudiation. Obviously, Delta did not intend these appointments as a repudiation. And, given the structure of the system boards, the appointments are neither so shocking nor so likely to taint the workings of the subsequent Board that somehow Delta ought to be "estopped" from using grievance arbitration in Stanton's case. Cf. Vaca v. Sipes, 386 U.S. at 185, 87 S.Ct. at 914; Drake Bakeries, Inc. v. American Bakery & Confectionery Workers, 370 U.S. 254, 260-63, 82 S.Ct. 1346, 1350-52, 8 L.Ed.2d 474 (1962); Boone v. Armstrong Cork Co., 384 F.2d 285, 289 (5th Cir. 1967). See generally Annot., 29 A.L.R.3d 668 (1970).
 
 
 12
 Second, Stanton claims that the reconstituted System Board lacked the requisite impartiality because the union members of the Board, fearing potential union liability for Stanton's attorney's fees, were biased against him. We see no merit in this argument. For one thing, the union is liable to Stanton, not for damages caused by Delta's acts, but, rather, only for any increase in those damages brought about by its own failure to give adequate advice to Stanton about processing his grievance. Vaca v. Sipes, 386 U.S. at 197-98, 84 S.Ct. at 920-21. These additional damages-apparently consisting of additional legal costs-were incurred (by Stanton or by his lawyer) whether or not Stanton won on the merits of his grievance. See Del Casal v. Eastern Airlines, Inc., 634 F.2d 295, 301-02 (5th Cir.), cert. denied, --- U.S. ----, 102 S.Ct. 386, 70 L.Ed.2d 206, 108 L.R.R.M. 2656 (1981); Cf. Gorman, Labor Law, 722-724 (1976). For another thing, even if some special contractual arrangement (such as a contingent legal fee arrangement) made those costs collectible from the union only in the event of Stanton's victory on the merits (a point we do not decide), this fact, in our judgment, would not be so likely to create serious bias as to outweigh the strong reasons leading the district court to remand the grievance for arbitration on its merits. At the very least, where the point of conflict between union and employee is comparatively minor, arbitration is not to be avoided simply because "an aggrieved employee's prosecution of his claim runs the risk of making his union an adversary...." Justice requires a fair tribunal, but not necessarily an "optimal" one. Haney v. Chesapeake & Ohio Railroad Co., 498 F.2d 987, 992 (D.C.Cir.1974).
 
 
 13
 Third, Stanton claims that the merits of his grievance should not have been sent back for arbitration because the jury, in deciding that the union did not represent him fairly, implicitly decided that he was right on the merits. The jury, however, did not decide the merits explicitly or implicitly. Rather, it decided only that the union breached its duty of fair representation. To make such a decision, it must have felt that Stanton had a plausible claim on the merits, perhaps even a fairly strong claim, for the union is not under a duty to represent employees who are raising frivolous matters. But the jury need not have decided that Stanton had a claim that he was bound to win. Although counsel for Delta Airlines made several remarks to the jury that suggested they should find for the union unless Stanton had a winning claim on the merits,[6] the district judge made no such suggestion. To the contrary, he correctly instructed the jury in a manner that allowed it to find against the union without finding that Stanton had a winning case on the merits.[7] Stanton's counsel told the court that he had "no objection to any part of the charge whatsoever and that it (is) a completely fair charge." And, nowhere does the record suggest any failure by the jury to comply with its "duty ... to follow the law, as it is laid down by the court." United States v. Battiste, 2 Sum. 240, 243, 24 F.Cas. 1042, 1043 (No. 14,545) (C.C.D.Mass.1835).
 
 
 14
 For these reasons, the judgment of the district court is affirmed.
 
 
 15
 Affirmed.
 
 
 
 *
 Of the Southern District of New York, sitting by designation
 
 
 [1]
 In 1936, the Railway Labor Act, 45 U.S.C. §§ 151 et seq. was extended to the air transportation industry except for § 3, 45 U.S.C. § 153, which dealt with the National Railroad Adjustment Board. See International Association of Machinists v. Central Airlines, Inc., 372 U.S. 682, 685-86, 83 S.Ct. 956, 958-59, 10 L.Ed.2d 67 (1963). In place of § 3's grievance system, Congress 1) authorized the creation of a National Air Transport Adjustment Board, and 2) required in the interim that each air carrier and its employees establish system, group, or regional boards of adjustment. The National Air Transport Adjustment Board has never been created; we deal here with a system board of adjustment. See 45 U.S.C. §§ 184, 185. Cf. Hunt v. Northwest Airlines, Inc., 600 F.2d 176, 178-79 (8th Cir.), cert. denied, 444 U.S. 946, 100 S.Ct. 308, 62 L.Ed.2d 315 (1979)
 
 
 [2]
 Stanton's criminal case took two years to get to trial. In the meantime, he was in an accident; he lost his Federal Aviation Administration license; he recovered that license in March 1979
 
 
 [3]
 The Board concluded:
 The evidence presented by the grievant that the leave was forced, rather than voluntary, consisted solely of his own testimony that he was told to take a leave of absence or be fired. Captain Loranger denied that he had ever told the grievant that he must take a leave or be fired. Captain Smith and Captain Cardno testified that no alternatives to the leave of absence, such as termination or holding out of service, had been considered by them or suggested to the grievant. The grievant testified in this case and in other proceedings (transcripts of which were read or admitted into the record) that he did not consider the action of the Company as a threat.... The only evidence of any action or statement by the Company that (Stanton) would receive back pay and benefits is the grievant's own testimony that Captain Loranger said, "If you are innocent don't worry about it." The grievant did not mention this, however, in his testimony before the System Board in 1976. Captain Loranger denied ever having made any statement that might have led the grievant to believe that he would receive back pay and benefits. This Board concludes that the preponderance of the evidence indicates that no statements or actions by the Company could have reasonably formed the basis for a belief by the grievant that he was being held out of service and that back pay and benefits would be forthcoming should he be acquitted.
 (Footnotes omitted.)
 
 
 [4]
 When the jury verdict was rendered concluding that ALPA had breached the duty of fair representation it owed to Stanton, both ALPA and Delta filed motions for judgments notwithstanding the verdict alleging that, as a matter of law, the evidence was not sufficient to support Stanton's duty of fair representation claim. Their motions were denied. In their cross-appeals they attack the soundness of that denial. However, counsel agreed that we need go into the merits of their cross-appeals only if we were to find merit in one of appellant Stanton's contentions. Since we reject appellant Stanton's claims, we need not consider the merits of the cross-appeals, and we dismiss them
 
 
 [5]
 The Delta Air Lines System Board of Adjustment, established in compliance with 45 U.S.C. § 184, see note 1, supra, consists of four members, two of whom are selected by ALPA and two of whom are appointed by Delta. Decisions are made by a majority vote of all members and, in case of a deadlock, a neutral member is appointed. Compensation and expenses for this fifth member are borne equally by Delta and ALPA
 
 
 [6]
 "I think that everyone will agree that, in order to reach the question of unfair representation at all, it has to be determined that the leave that Stanton took was not voluntary
 ....
 "So I submit to you that you need to consider whether this leave was voluntary, under these circumstances. I submit to you that the evidence will show that it was voluntary."
 
 
 [7]
 The questions presented to the jury, as explained by the judge, asked the jurors to decide whether the union had represented Stanton fairly and whether any breach of the union's duty "caused Mr. Stanton to fail to file a timely grievance." The court concluded by specifically saying, "you are not to concern yourselves with whether Delta was correct or not correct in denying the grievance which was filed in the year 1975."