**Donald J. BESSEE, Plaintiff,**

v.

**HOTEL AND RESTAURANT EMPLOYEES AND BARTENDERS UNION, LOCAL 2, et al., Defendants.**

**No. C–82–6980 RHS.**

United States District Court, N.D. California.

Dec. 7, 1984.

---

Dan Siegel, Siegel, Friedman, Dickstein & Yee, Oakland, Cal., for plaintiff.

Matthew D. Ross, Neyhart, Anderson, Nussbaum, Reilly & Freitas, San Francisco, Cal., for Hotel & Restaurant Employees & Bartenders Union, Local 2.

David C. Carr, Carr, McClellan, Ingersoll, Thompson & Horn, Burlingame, Cal., for Bay Meadows Catering Co.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SCHNACKE, District Judge.

The above case came on to be tried before the Court without a jury from December 3, 1984 to December 6, 1984, with all parties and their counsel present. After considering the pleadings, the evidence, the argument and briefs from counsel, the Court files herewith its Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Plaintiff Donald J. Bessee, hereafter "Bessee", is a former employee of defendant Bay Meadows Catering Co., hereafter "Bay Meadows", and a member of defendant Hotel and Restaurant Employees and Bartenders Union, Local 2, hereafter "Local 2".

2. Defendant Bay Meadows is the catering company at Bay Meadows Race Track, located in San Mateo County, California.

3. Defendant Local 2 is a labor organization representing employees in an industry affecting commerce and is located in San Francisco, California.

4. At all relevant times herein, Bay Meadows and Local 2 had a collective bargaining agreement which covered the wages and other terms and conditions of employment for certain Bay Meadows employees, including the plaintiff during his employment at Bay Meadows. According to the terms of the collective bargaining agreement, Bay Meadows, or Local 2, could file and prosecute grievances with the other party concerning disputes arising under the collective bargaining agreement, including but not limited to disputes concerning

the discharge or termination of employees represented by Local 2.

5. On October 7, 1980, plaintiff was dispatched to defendant Bay Meadows for employment by defendant Union as a "Second Cook".

6. On October 7, 1980, defendant Bay Meadows did not have a position for a "Second Cook", but for a "Pantry" worker.

7. On October 7, 1980, plaintiff was employed by defendant Bay Meadows and was thereafter paid in the position of "Pantry" worker and was assigned to a kitchen position that called for a Pantry employee.

8. Plaintiff was paid as a "Pantry Worker" during his period of employment at Bay Meadows, but very shortly after his termination (and after he had complained to the defendant Union of the disparity in his pay), he was paid the differential between the two wage rates by Bay Meadows.

9. On November 5, 1980, the twenty-first working day of plaintiff's employment and the thirtieth calendar day after his employment, plaintiff was informed that he was to be terminated in his employment effective on November 6, 1980.

10. On November 5, 1980, plaintiff's supervising employee, Mr. William Jones, requested from the accounting department of defendant Bay Meadows a termination check for plaintiff. Plaintiff's final check was to include payment through November 6, 1980.

11. On November 6, 1980, when plaintiff appeared for work, he was notified again that he was terminated and was given his termination check for wages through November 6, 1980.

12. Plaintiff worked less than a total of thirty working days at Bay Meadows.

13. The collective bargaining agreement in effect between defendants was for the term January 1, 1977 to December 31, 1981. Said Agreement is hereafter referred to as the "1977 to 1981 Agreement". The 1977 to 1981 Agreement provided that either Bay Meadows or Local 2 could reopen the 1977 to 1981 Agreement for nego-tiations and possible amendments or modi-fications of the economic terms, on January 1, 1980, by giving the other party written notice of a desire to negotiate changes in the economic terms at least 90 days prior to January 1, 1980.

14. Upon written notice duly given, Local 2 and Bay Meadows reopened their contract for possible amendments on the economic items and negotiated over such economic proposals, from December 1979 to February 1980. As was allowed by the 1977 to 1981 Agreement, Local 2 members engaged in a strike and work stoppage in support of its economic demands. The strike was settled when the Amendments to the 1977 to 1981 Agreement were concluded and ratified in February 1980.

15. In the course of negotiating over changes in the economic terms of the 1977 to 1981 Agreement, Bay Meadows proposed and Local 2 agreed to memorialize a past practice and unwritten agreement between the parties, which was that all newly hired employees at Bay Meadows were "probationary employees" for their first thirty working days, whether worked consecutively or spread over an entire racing meet. During the newly hired employee's probationary period, the probationary employee could be terminated by Bay Meadows without just or sufficient cause, i.e., for virtually any reason. Only after the newly hired employee completed his or her probationary period did Bay Meadows have to have cause to terminate the employee, according to this long-standing and mutually acknowledged practice at Bay Meadows.

16. Bay Meadows proposed and the Union agreed to memorialize in writing this long-standing practice at the same time that a settlement was reached on the economic terms in February of 1980. The parties' agreement with respect to the thirty working days probationary period for new hires was set forth in a Memorandum of Agreement.

17. Both the 1980 Amendments to the 1977 to 1981 Agreement concerning economic items and the Memorandum of

Agreement setting forth the probationary period for new hires, were fully bargained, agreed upon and ratified by the union membership in February of 1980 and were in effect at the time of plaintiff's employment at Bay Meadows in October and November of 1980. The formal written documents expressing the parties' agreement on the economic items and the probationary period were misplaced by the parties and were not signed by either party until March of 1981, and then only by the President of Local 2, Charles Lamb, because of a change in administrative personnel and oversight on the Union's part, and a disagreement between the parties over a term concerning holiday pay not relevant to this action.

18. Pursuant to the 1980 amendments to the 1977 to 1981 Agreement, Bay Meadows implemented the wage increases negotiated and ratified in February 1980, retroactively to January 1, 1980, and prospectively on January 1, 1981, despite the fact that the formal documents memorializing these wage increases and the probationary period were not executed by either party until March of 1981.

19. Plaintiff was discharged before completing his probationary period because his employer, Bay Meadows, did not like his attitude towards his work and the fact that the Company felt Bessee did not get along with his fellow employees. Bay Meadows did not discharge Bessee for any reasons of discrimination or alleged Union activities.

20. Before and after his discharge from Bay Meadows, plaintiff complained to Local 2 business agents Robert Jacobs and Harry Steiner that he was not being paid the proper wages for his classification of Second Cook. Bay Meadows was paying plaintiff the lesser wages provided for in the Agreement for a "Pantry" position. In addition, plaintiff complained to Jacobs and/or Steiner that he had not been paid his uniform cleaning allowance by Bay Meadows. Jacobs and/or Steiner assisted plaintiff in obtaining his proper wages and

uniform allowance and met with Bay Meadows' representatives for this purpose.

21. Defendant Union filed a written grievance concerning plaintiff's discharge on June 10, 1981. The 1977 to 1981 Agreement between Bay Meadows and Local 2 required grievances to be filed within ten days of the discharge. Defendant Union did not initially file a written grievance because it was convinced the grievance was unwinnable because of plaintiff's probationary status. A grievance was ultimately filed on June 10, 1981 only because, being aware of plaintiff's litigious propensities, defendant Union sought to prevent the filing of legal action.

22. Mr. DiGuglielmo was replaced as the Manager at Bay Meadows before the June 10, 1981 written grievance could be processed to arbitration. At the arbitration of this grievance, Mr. DiGuglielmo's replacement, Mr. Rodney Fraser, denied that Mr. DiGuglielmo or anyone connected with Bay Meadows agreed with Jacobs to extend the contractual time limits for filing written grievances concerning discharges. The arbitration hearing on the Union's grievance was a bifurcated hearing limited to the issue of the timeliness of the Union's grievance. On August 30, 1982, Arbitrator John Kagel made and entered his decision that the written grievance was not timely filed and dismissed the grievance. Arbitrator Kagel expressed no opinion on the merits of the underlying grievance, the significance of plaintiff's probationary status, or other issues involving the merits of the grievance.

## CONCLUSIONS OF LAW

1. This is a hybrid action for breach of contract against defendant Bay Meadows and breach of the duty of fair representation against Defendant Local 2. Jurisdiction lies in this Court pursuant to 29 U.S.C. § 185(a).

2. After consideration of all the evidence, including the testimony of a professional labor arbitrator called as an expert witness, the Court concludes that plaintiff's grievance concerning his discharge from

Bay Meadows in November of 1980 was so unmeritorious and frivolous as to justify judgment in favor of defendants whether or not the Union's handling of the grievance was so egregiously arbitrary or unfair as to constitute a breach of the duty of fair representation.

3. At the time of his discharge, plaintiff was a probationary employee. According to long-standing practice at Bay Meadows and the terms of the Memorandum of Agreement negotiated and ratified in February of 1980, Bay Meadows did not have to have just or sufficient cause to discharge plaintiff. Thus, the Court concludes that the underlying grievance altogether lacked merit. The Court is further convinced that there is no reasonable possibility that a professional labor arbitrator would have applied different considerations or might have reached a different conclusion on the merits of the underlying grievance. The employer was free to terminate plaintiff for virtually any reason at all until after he completed his probationary period of thirty working days and it is extremely doubtful that a professional labor arbitrator would have decided the merits of the case in favor of the Grievant had the grievance been decided on the merits.

4. Based on these findings, the Court need not decide whether the Union's handling of the grievance breached the duty of fair representation. If the Court was obligated to make that determination, the Court would take into account the lack of merit of plaintiff's grievance in evaluating the sufficiency of the Union's representation because the more important and meritorious the grievance, the more substantial the justification for the Union's handling of the grievance must be. [*Gregg v. Chauffeurs, Teamsters & Helpers Union, Local 150,* 699 F.2d 1015, 1016, (9th Cir.1983) quoting from *Robesky v. Qantas Empire Airways Ltd.,* 573 F.2d 1082 at 1092 (9th Cir.1978)]. It follows that for less meritorious and insubstantial grievances, a less exacting standard should be applied to judge the Union's performance. In this case, the grievance was so obviously without merit that the Union representative's delay and reluctance to proceed with a written grievance is understandable. In any case, the complete lack of merit in plaintiff's grievance demonstrates that plaintiff suffered no prejudice in the untimely filing of the grievance and warrants judgment for defendants because there is no duty to represent a member in respect to a frivolous claim. *Dutrisac v. Caterpillar Tractor Co.,* 749 F.2d 1270 (9th Cir.1983), citing *Stanton v. Delta Air Lines, Inc.,* 669 F.2d 833, 838, 109 LRRM 2739 (1st Cir.1982) for the proposition that there is no breach of duty of fair representation where the underlying claim is so meritless as to be frivolous for there is no duty to represent a member in respect to a frivolous claim.