# United States Court of Appeals
## For the First Circuit

No. 04-1830

EUGENE EMMANUEL,

Plaintiff, Appellant,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL UNION NO. 25,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin, Senior Circuit Judge,

and Howard, Circuit Judge.

Daniel J. Ciccariello with whom Law Office of Daniel J. Ciccariello, was on brief, for appellant.
Matthew E. Dwyer with whom Dwyer, Duddy and Facklam Attorneys at Law, P.C., was on brief, for appellee.

October 14, 2005

**HOWARD**, <u>Circuit Judge</u>.  After losing his job as a bus driver for Laidlaw, Inc. ("Laidlaw"), Eugene Emmanuel filed a grievance with his union, the International Brotherhood of Teamsters, Local Union No. 25 ("Union"), claiming that his termination violated the Union's collective bargaining agreement ("CBA").  The Union unsuccessfully pursued Emmanuel's grievance through arbitration.  Dissatisfied with the outcome, Emmanuel sued the Union, claiming that it had violated its duty of fair representation during the arbitration.  The district court granted summary judgment for the Union.  Emmanuel appeals that ruling and also challenges the district court's denial of his motion for reconsideration.  We affirm.

## I.

In 1999, Emmanuel began work for Laidlaw as a school bus driver in West Roxbury, Massachusetts.  On June 14, 2000, Laidlaw asked Emmanuel to drive a bus from its West Roxbury facility to a facility in a neighboring town.  Emmanuel claims that, when he entered the bus, he could not find the pre-trip inspection log but recorded his safety observations on the back of his time sheet.  He noted that the brake was "set up a little higher than it was supposed to be" but that he did not consider this a safety problem.  Emmanuel claims that, as he pulled out of the West Roxbury facility, the bus accelerated out of control and the brakes failed.  He steered the bus off the road and crashed through several bushes

and a fence before stopping in a ditch.

Emmanuel blamed the accident on defects in the bus's accelerator and brake systems. Laidlaw's investigation revealed that the brakes had been recently serviced and were in working order. After reviewing other relevant materials, including the police report and Emmanuel's statement, Laidlaw determined that Emmanuel was at fault and that the accident was "serious in nature." The CBA permitted Laidlaw to fire an employee without warning for involvement in a "serious at-fault accident." On August 23, 2000, Laidlaw discharged Emmanuel.

Emmanuel filed a grievance with the Union, claiming that the discharge was "unjust" and requesting reinstatement with backpay. The Union business agent, Ritchie Reardon, represented Emmanuel in the grievance proceedings. In October 2000, Reardon, Emmanuel and several Laidlaw officials met to resolve the grievance. At this meeting, Laidlaw proposed to reinstate Emmanuel and to convert the post-termination period into an unpaid suspension. Emmanuel rejected the offer and demanded arbitration.

Prior to arbitration, Emmanuel met with Reardon to discuss strategy. Emmanuel urged Reardon to argue that the accident was caused by mechanical defects in the bus. Emmanuel provided Reardon with a list of employees who he claimed would support this theory. Reardon told Emmanuel that he should arrange for these employees to contact him because employees generally

-3-

resist testifying against their employer after being approached by the Union business agent. None of these employees (only one of whom saw the accident) ever contacted Reardon.

Reardon investigated Emmanuel's theory by interviewing several Laidlaw mechanics. These individuals were "hostile" to Emmanuel's claim because Emmanuel had been in other accidents which he had blamed on mechanical defects, and because the mechanics had taken these excuses "personally." The mechanics told Reardon that the brakes and accelerating system were not defective. Based on these conversations, Reardon believed that, if he were to call "the mechanics to the witness stand they would actually say things that would have harmed Emmanuel's case."

Lacking evidence to corroborate the defect theory, Reardon focused on an alternative argument before the arbitrator. The CBA required Laidlaw to impose discipline on an employee within 20 days of the date that the company learned of the accident.[1] Because Laidlaw did not inform Emmanuel of his discharge until 70 days after the accident, the Union argued that Emmanuel's discharge violated the CBA. The arbitrator rejected this argument and concluded that Emmanuel's discharge was justified under the CBA.

After losing the arbitration, Emmanuel sued the Union for violating the duty of fair representation. His complaint alleged

---

[1]The CBA provided that "discipline shall be imposed no later than twenty days from the day of the company's knowledge of the incident, which gave rise to such discipline."

-4-

that the Union inadequately investigated his mechanical defect theory and irrationally decided to present the timing issue to the arbitrator. After discovery, the Union moved for summary judgment. The district court concluded, as a matter of law, that the Union had adequately investigated Emmanuel's defect theory and reasonably represented him at the arbitration. Because there was no evidence that the Union's conduct was discriminatory, in bad faith, or arbitrary, the court entered judgment for the Union.

Shortly after this ruling, Emmanuel sought reconsideration based on his discovery of "new evidence." Through an internet search, a paralegal working on Emmanuel's case found that the bus involved in the accident had been recalled by the manufacturer to check for a defect in the acceleration system. This recall notice was published and available prior to the arbitration. Emmanuel argued that this evidence established a question of fact concerning the sufficiency of the Union's investigation. The district court denied the motion. Emmanuel appeals both the summary judgment and motion for reconsideration rulings.

## II.

### A. Summary Judgment

We review the grant of summary judgment de novo, taking all disputed facts in the light most favorable to Emmanuel. See Houlton Citizens' Coalition v. Town of Houlton, 175 F.3d 178, 184

(1st Cir. 1999). In so doing, we do not consider "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). We will affirm the grant of summary judgment so long as the record reflects that no genuine issue of material fact exists and that the Union is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c).

As "the exclusive bargaining representative of the employees, [a] [u]nion [has] a statutory duty fairly to represent all of those employees both in its collective bargaining . . . and in its enforcement of the resulting collective bargaining agreement." United Steelworkers of Am., v. Rawson, 495 U.S. 362, 372 (1990) (quoting Vaca v. Sipes, 386 U.S. 171, 177 (1967)). This duty is called the "duty of fair representation." BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., 132 F.3d 824, 830 (1st Cir. 1997). A union breaches this duty by acting discriminatorily, in bad faith, or arbitrarily toward a union member. Morales-Vallellanes v. Potter, 339 F.3d 9, 16 (1st Cir. 2003). Proof of any of these bad acts will suffice to establish a claim. See id.

Emmanuel argues only that the Union acted arbitrarily in handling his grievance. A union acts arbitrarily "if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of

-6-

reasonableness as to be irrational." Miller v. United States Postal Service, 985 F.2d 9, 11-12 (1st Cir. 1993) (citation omitted). This standard requires the court to examine objectively the competence of the union's representation. See Neal v. Newspaper Holdings, Inc., 349 F.3d 363, 369 (7th Cir. 2003). But in performing this objective evaluation, the reviewing court must accord the union's conduct substantial deference. See Air Line Pilots Ass'n Int'l v. O'Neill, 499 U.S. 65, 78 (1991); Morales-Vallellanes, 339 F.3d at 16. This standard of review recognizes that unions must have ample latitude to perform their representative functions. Miller, 985 F.2d at 12.

Emmanuel challenges the Union's investigation of his theory of the accident. In particular, he faults the Union for not interviewing the potential witnesses whom he identified for Reardon.

The duty of fair representation mandates that a union conduct at least a "minimal investigation" into an employee's grievance. Garcia v. Zenith Elec. Corp., 58 F.3d 1171, 1176 (7th Cir. 1995). But under this standard, only an "egregious disregard for union members' rights constitutes a breach of the union's duty" to investigate. Castelli v. Douglas Aircraft Co., 752 F.2d 1480, 1483 (9th Cir. 1985).

Reardon was willing to speak with the potential witnesses that Emmanuel identified. But he told Emmanuel to urge the

witnesses to contact him because, in his experience, employees were reluctant to testify against management after being approached by the Union business agent. As Reardon explained, requiring potential employee-witnesses to come to him tested their "willingness to actually testify or provide evidence that is unfavorable to an employer." Reardon's approach was designed with an eye toward assuring that the Union only called helpful witnesses at the arbitration. This strategy does not constitute a wholesale disregard of the Union's duty to investigate Emmanuel's claim.

Moreover, Emmanuel has not demonstrated, as he must, that any of these employees would have provided beneficial information. See Black v. Ryder/P.I.E. Nationwide, Inc., 15 F.3d 573, 585 (6th Cir. 1994) (stating that the failure to "present favorable evidence during the grievance process . . . may constitute a breach of . . . . duty . . . only if that evidence probably would have brought about a different decision"). From our review of the record, none of the witnesses was on the bus at the time of the accident or otherwise was able to offer evidence to corroborate Emmanuel's assertion that the bus was defective. These witnesses would not have provided competent testimony to support Emmanuel's claim.[2]

_____

[2]Emmanuel suggests that one of the proposed witnesses would have testified that he was aware of a previous circumstance in which a bus accelerator stuck. But without testimony that it was the same bus or bus model that Emmanuel drove on the day of the accident, this testimony, if admitted into evidence at all, would not have been particularly helpful to Emmanuel's case.

In any event, the Union did actively investigate Emmanuel's claim. Reardon spoke to several Laidlaw mechanics about the incident and Emmanuel's theory. These individuals would have been critical witnesses at the arbitration because they could have testified about the mechanical condition of the bus. The mechanics told Reardon that the bus was not defective, and they were openly resentful of Emmanuel's claim. These interviews understandably discouraged Reardon from pursuing the defect theory. Reardon's interviews sufficed to discharge the Union's duty to investigate. See Garcia, 58 F.3d at 1177-78 (stating that the union discharged its duty of fair representation by conducting minimally sufficient investigation, even though the grievant would have preferred that the union had investigated his claim more thoroughly); Castelli, 752 F.2d at 1483 (holding that the union met its duty of fair representation where the union business representative spent no more that one and a half hours in investigating the grievance and preparing for the arbitration); Findley v. Jones Motor Freight, 639 F.2d 953, 956-61 (3d Cir. 1981) (concluding that the union satisfied its duty of fair representation by conducting some investigation of the grievance, even though it could have conducted a more searching investigation).

In addition to challenging the quality of the Union's investigation, Emmanuel faults the Union for presenting the argument that Laidlaw's discharge decision violated the CBA's

timing provision. He contends that, because the CBA provision establishing time limits for imposing discipline was untested, it was irrational for the Union to rely on this argument before the arbitrator. We disagree.

"It is for the union, not the courts to decide whether and in what manner a particular grievance should be pursued." Patterson v. Int'l Bhd. of Teamsters, Local 959, 121 F.3d 1345, 1349-50 (9th Cir. 1997). A union does not act arbitrarily merely because it errs in interpreting a particular provision of a collective bargaining agreement. Peterson v. Kennedy, 771 F.2d 1244, 1254 (9th Cir. 1985). The CBA provision at issue arguably supported the Union's position that Emmanuel's termination was untimely. As Reardon had not discovered evidence to support the mechanical defect theory, it was rational for him to focus on this alternate theory before the arbitrator. See Garcia, 58 F.3d at 1179 (stating that the union satisfied its duty of fair representation where it pursued a rational arbitration strategy even though the employee would have preferred a different strategy).[3]

In sum, the record demonstrates that the Union

---

[3]Emmanuel also argues that it was irrational for the Union to fail to present evidence that other drivers often recorded pre-trip inspection information, not in the safety log book, but rather in other locations. Such evidence would have made no difference because the arbitrator assumed that Emmanuel conducted an appropriate pre-trip inspection. See Black, 15 F.3d at 585.

-10-

investigated the mechanical defect theory and presented a rational argument to support the grievance.  That is all that the duty of fair representation requires.

### B. Motion for Reconsideration

Shortly after the district court granted the Union's motion for summary judgment, Emmanuel sought reconsideration on the ground that he had discovered "new evidence."  See Fed. R. Civ. P. 59(e).  Specifically, through an internet search, he found that the bus had been recalled in 1995 because of a problem that resulted in "the accelerator sticking at the full power position."  In light of this discovery, Emmanuel argues that the Union was incompetent in not doing this basic research and that, if it had done so, it would have found evidence to support the mechanical defect theory.  Emmanuel posits that this recall notice establishes a triable issue on the sufficiency of the Union's investigation, and that the district court abused its discretion in denying his motion for reconsideration.

We review the denial of a motion for reconsideration for a manifest abuse of discretion.  See Vasapolli v. Rostoff, 39 F.3d 27, 36 (1st Cir. 1994).  Rule 59(e) provides litigants with a vehicle to present the district court with evidence uncovered after the entry of judgment.  Aybar v. Crispin-Reyes, 118 F.3d 10, 16 (1st Cir. 1997).  But it "does not provide a vehicle for a party to undo its own procedural failures and it certainly does not allow

-11-

a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to judgment." Id. (citations omitted). Thus, a district court does not abuse its discretion by denying a motion for reconsideration grounded on the discovery of evidence that, in the exercise of due diligence, could have been presented earlier. See Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 91 n.1 (1st Cir. 1993).

The district court did not abuse its discretion because the recall notice was available to Emmanuel well in advance of the court's summary judgment ruling. Emmanuel admits as much in his appellate brief. In arguing that the existence of the recall notice demonstrated arbitrary conduct by the Union, Emmanuel stated that the notice was "information that was available to anyone" as it was posted "on the internet." Emmanuel has offered no persuasive reason for waiting until after the entry of judgment to search the internet for publically available documents that could have supported his claim.[4] See Hayden v. Grayson, 134 F.3d 449, 455 n.9 (1st Cir. 1998).

## III.

For the reasons stated, the judgment is **affirmed**.

---

[4]Emmanuel suggests that he could not have found the recall notice earlier because the discovery order allowed him to take only certain depositions, which would not have led him to discover the notice. Putting aside that Emmanuel could have sought to expand formal discovery, the notice was a public document available on the internet to "anyone." The limits on formal discovery had nothing to do with Emmanuel's delay in searching for this evidence.