# United States Court of Appeals
## For the First Circuit

No. 20-1690

JON L. BRYAN,

Plaintiff, Appellant,

v.

AMERICAN AIRLINES, INC.; ALLIED PILOTS ASSOCIATION,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Lynch, Kayatta, and Barron,
Circuit Judges.

Stephen Schultz, with whom Schultz Law LLP was on brief, for appellant.
Mark W. Robertson, with whom Sloane Ackerman and O'Melveny & Myers LLP were on brief, for appellee American Airlines, Inc.
James P. Clark, with whom Law Offices of James P. Clark, P.C. was on brief, for appellee Allied Pilots Association.

February 16, 2021

**LYNCH**, **Circuit Judge**.  In December 2017, Jon L. Bryan, a former pilot for US Airways who retired in January 1999, brought suit against the Allied Pilots Association ("APA") and American Airlines, Inc. ("American Airlines") under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 et seq.

In 1999, at Bryan's request, his union at the time submitted a grievance on his behalf against his then-employer US Airways, which US Airways denied.  That grievance alleged that US Airways violated the terms of the applicable collective bargaining agreement by cancelling Bryan's scheduled flight retraining which allegedly led to his premature retirement.  Bryan's suit alleges that APA, the successor to the union which first submitted his grievance, breached its statutory duty of fair representation by withdrawing from pursuing his nearly nineteen-year-old grievance to arbitration based on what he alleges was an inadequate investigation into his grievance's merits.  He also brings an alleged "hybrid" suit against American Airlines, as the successor to US Airways, for US Airways's alleged breach of the collective bargaining agreement that purportedly led to his premature retirement.

The district court dismissed the claim against American Airlines and later granted APA's motion for summary judgment. Concluding that APA did not breach its duty of fair representation, we affirm.

I.

A.   Facts

We refer to the district court's motion to dismiss and summary judgment opinions, which fully set forth the facts and issues in this case.  See generally Bryan v. Allied Pilots Ass'n, No. 17-cv-12460-DJC, 2020 WL 3182881 (D. Mass. June 15, 2020); Bryan v. Allied Pilots Ass'n, No. 17-cv-12460-DJC, 2018 WL 6697681 (D. Mass. Dec. 19, 2018).  We summarize only those facts pertinent to the duty of fair representation claim because we conclude that that claim against APA fails, and Bryan's counsel conceded at oral argument that if the claim against APA fails, then so does the "hybrid" claim against American Airlines.  See Miller v. U.S. Postal Serv., 985 F.2d 9, 10-11 (1st Cir. 1993) (describing a "joint cause" of action against a union for breach of the duty of fair representation and an employer for breach of contract as a "hybrid" suit and explaining that the failure to prove either "results in failure of the entire hybrid action"); Stanton v. Delta Air Lines, Inc., 669 F.2d 833, 836 (1st Cir. 1982) (explaining that courts generally do not have jurisdiction over the merits of any employment dispute under the RLA, except to determine whether a union has breached its duty of fair representation).

In the summer of 1998, US Airways scheduled Bryan for flight retraining but later cancelled his training date and did not reschedule it.  In January 1999, Bryan retired as a pilot from

US Airways under the second phase of an Early Retirement Incentive Program into which he had opted. The program allowed up to 325 pilots to retire no later than May 2000 with certain benefits. He received all benefits called for under the program. In February 1999, Bryan filed a grievance with the Air Line Pilots Association ("ALPA"), the then-certified collective bargaining representative for US Airways pilots, relating to the cancellation of his flight retraining and its consequences.

ALPA initially pursued the grievance at his request. US Airways denied Bryan's grievance in October 1999, and it affirmed that denial in August 2000. On August 29, 2000, ALPA submitted Bryan's dispute to the US Airways Pilots System Board of Adjustment for arbitration pursuant to ALPA's standard practices.

Between August 2000 and September 2014, Bryan's grievance was not scheduled for arbitration. There was a considerable backlog of more than 400 grievances at US Airways during that time, including grievances which were given priority over Bryan's grievance. That backlog was exacerbated by bankruptcies filed by US Airways in 2002 and 2004. During that period, Bryan contacted union representatives several times regarding his grievance.

In January 2004, Bryan sent a letter to the National President of ALPA inquiring as to the status of his grievance and requesting that it be scheduled for arbitration. There is no

evidence that he received a response from the National President, and his grievance was not scheduled for arbitration after that inquiry. In June 2004, he emailed Captain Tracy Parrella, the Grievance Committee chair for ALPA, requesting that she schedule his grievance for arbitration because he believed the delay in processing his grievance was excessive. In or around August 2004, Parrella responded to Bryan and advised him that his "grandchildren would be dead before the arbitration [of his grievance] was scheduled," and Bryan interpreted this statement as hyperbole referring to the union's lack of resources to process the backlog of grievances. In December 2005, Bryan emailed Parrella with a settlement proposal and threatened to initiate litigation if no settlement was reached with US Airways regarding advancing his grievance to arbitration. ALPA did not conduct settlement negotiations with US Airways and Bryan did not initiate litigation. In January 2006, Parrella notified Bryan that his grievance would not be scheduled for arbitration in the "foreseeable future." In October 2007, Bryan sent a letter to the National President of ALPA stating that ALPA had failed to schedule his grievance for arbitration, referencing a duty of fair representation on the part of ALPA, and indicating that if no settlement could be reached with US Airways, he would pursue legal action. ALPA did not schedule Bryan's grievance for arbitration following that letter nor did Bryan commence litigation against ALPA or US Airways.

In or around May 2008, the US Airways Pilots Association ("USAPA") replaced ALPA as the certified collective bargaining representative for US Airways pilots. Parrella remained the Grievance Committee chair for USAPA from 2008 through 2012. At some point during her tenure as Grievance Committee chair, Parrella placed Bryan's grievance on a list of grievances that the union would not pursue because the union had determined it had no merit. In December 2011, Bryan contacted Parrella again to ask about the status of his grievance and again threatened litigation for the union's failure to take his grievance to arbitration. Following this communication with Parrella, his grievance was still not scheduled for arbitration and he did not pursue legal action. Bryan had no further communication with USAPA regarding his grievance between December 2011 and October 2014.

In or around 2013, Captain David Ciabattoni, who had replaced Parrella as USAPA's Grievance Committee chair, reviewed Bryan's grievance. He discussed that grievance with Captain Doug Mowery, the former ALPA Grievance Committee chair at the time Bryan's grievance was filed, who Ciabattoni considered a subject-matter expert regarding that grievance. Based in part on that discussion with Mowery, Ciabattoni concluded that Bryan's grievance lacked merit and he placed Bryan's grievance on an internal list of grievances that were candidates for withdrawal by the union.

In or around December 2013, US Airways completed a merger into American Airlines. At the time of the merger, USAPA was still the certified collective bargaining representative for the US Airways pilots and APA was the representative for the American Airlines pilots. In or around September 2014, APA became the certified collective bargaining representative for the pilots of the merged American Airlines. In October 2014, Ciabattoni notified Bryan by email of this change in representation and the grievance processing going forward.

In 2015, APA set up a process for reviewing the hundreds of outstanding USAPA grievances by having former USAPA representatives review grievance files and recommend which grievances APA should pursue either through arbitration or settlement. APA relied on the USAPA representatives as subject-matter experts because they had more knowledge and information as to the USAPA grievances. Tricia Kennedy, Esq., APA's Director of Grievance and Dispute Resolution, asked Ciabattoni and several other former USAPA representatives to travel to APA and review the grievance files over several days. In November 2015, Ciabattoni sent Kennedy an email containing a table titled "OLD USAPA WITHDRAWN GRIEVANCES" which included Bryan's grievance. After reviewing Bryan's grievance file for APA, Ciabattoni and other former USAPA representatives agreed that Bryan's grievance lacked merit and recommended to Kennedy that APA withdraw the grievance.

Kennedy did not make any independent decisions as to which grievances were withdrawn and only passed the recommendations on to the APA President.

Bryan contacted APA for the first time regarding the status of his grievance when he called Kennedy in February 2017. Kennedy did not follow up on his inquiry and so he called her again in April 2017. She again did not follow up with him and Bryan contacted her again in May 2017, at which time she told him that a meeting was scheduled with American Airlines to discuss the grievances, including his. There is no evidence that Kennedy or anyone else from APA told Bryan that his grievance had merit or that APA would pursue his grievance through arbitration.

In August 2017, APA and American Airlines reached a tentative settlement agreement in which American Airlines agreed to pay a sum in settlement of those grievances that the USAPA subject-matter experts had found to have merit, while APA agreed to withdraw all the grievances that the USAPA subject-matter experts had determined did not have merit. On October 5, 2017, Kennedy notified Bryan of the tentative settlement agreement and that his grievance had been withdrawn. Kennedy told him that he could contact Paul DiOrio, the Chairman of the Philadelphia domicile, if he had any questions about his grievance. Bryan never contacted DiOrio or anyone else at APA to discuss his grievance or to object to its withdrawal, though he did request his grievance

file from Kennedy which was not provided to him until after he filed this action. The Global Settlement Agreement, which included the withdrawal of Bryan's grievance, was finalized and executed on October 16, 2017.

B.   Procedural History

On December 14, 2017, Bryan filed this action in the district court, alleging a breach of APA's statutory duty of fair representation and a breach of the collective bargaining agreement which he asserted resulted in his allegedly premature retirement. On March 27, 2018, APA and American Airlines each filed a motion to dismiss for failure to state a claim. The court held a hearing on those motions on June 26, 2018. On December 19, 2018, the district court allowed American Airlines's motion to dismiss, but denied APA's motion to dismiss. Bryan, 2018 WL 6697681, at *8. In dismissing the claim against American Airlines, the court held that Bryan had failed to state a claim to relief because he failed to allege any facts plausibly suggesting collusion between APA and American Airlines in denying his rights under the RLA or the collective bargaining agreement or bad faith on American Airlines's part in entering the Global Settlement Agreement. Id. at *6-8.

On January 31, 2020, APA filed a motion for summary judgment. The district court held a hearing on the motion on April 2, 2020. On June 15, 2020, the court allowed APA's motion for

- 9 -

summary judgment.  Bryan, 2020 WL 3182881, at *8.  It first assumed that APA owed a statutory duty of fair representation to Bryan even though his grievance had been filed with ALPA.  Id. at *4-5.  It next held that the RLA's six-month statute of limitations barred Bryan's claim against APA because he "knew or reasonably should have known of the unions' alleged wrongdoing long before filing suit."  Id. at *5-6.  Finally, the court held that, even if his claim against APA was not time-barred, the claim failed on the merits because APA did not breach its duty of fair representation.  Id. at *7.  The court concluded that APA instituted an adequate review process in which it relied on the recommendations of former USAPA representatives and that the review process was neither arbitrary nor conducted in bad faith with respect to Bryan's grievance.  Id.

Bryan timely appealed both district court decisions.

II.

Because we agree with the district court that the evidence Bryan put forward on summary judgment does not permit a finding of any breach of a duty of fair representation by APA, we need not reach the statute of limitations issue.  And because we hold that Bryan's duty of fair representation claim against APA lacks merit, we need not reach the claim against American Airlines

which must also fail, as Bryan's counsel properly conceded.[1]  See Miller, 985 F.2d at 11; Stanton, 669 F.2d at 836; see also Martin v. Am. Airlines, Inc., 390 F.3d 601, 608 (8th Cir. 2004) (holding that, because the court concluded the union did not breach its statutory duty of fair representation, the court lacked jurisdiction over the minor dispute asserted against the employer under the "hybrid" theory).

We review de novo a district court's decision to grant a motion to dismiss for failure to state a claim.  Harry v. Countrywide Home Loans, Inc., 902 F.3d 16, 18 (1st Cir. 2018).  We also review de novo a district court's grant of summary judgment. Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 21 (1st Cir. 2018).  "Summary judgment is warranted if the record, construed in the light most flattering to the nonmovant, 'presents no genuine issue as to any material fact and reflects the movant's entitlement to judgment as a matter of law.'"  Id. at 20-21 (quoting McKenney v. Mangino, 873 F.3d 75, 80 (1st Cir. 2017)); see also Fed. R. Civ. P. 56(a).

---

[1]  Bryan and American Airlines also dispute whether case law regarding the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141 et seq., is applicable to claims brought under the RLA.  Because we affirm the dismissal of the claim against American Airlines without reaching the merits, we need not resolve this dispute.  This dispute over the LMRA case law does not relate to the rules set forth in Miller, 985 F.2d at 10-12, a case which APA asserts applies in the RLA context and which Bryan does not contest applies here.

- 11 -

Under the RLA, which governs labor relations in the airline industry, see 45 U.S.C. § 181, a certified union has a statutory duty of fair representation that requires it "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 76 (1991) (quoting Vaca v. Sipes, 386 U.S. 171, 177 (1967)); see also Emmanuel v. Int'l Brotherhood of Teamsters, Loc. Union No. 25, 426 F.3d 416, 420 (1st Cir. 2005) ("A union breaches this duty by acting discriminatorily, in bad faith, or arbitrarily toward a union member.").[2] "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." O'Neill, 499 U.S. at 67 (citation omitted) (quoting Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953)); see also id. at 78; Miller, 985 F.2d at 12. "[A] union's mere negligence or erroneous judgment will not constitute a breach of the duty of fair representation." Miller, 985 F.2d at 12. "A union acts in bad faith when it acts with an improper

---

    [2] Bryan has waived any argument that there was "discrimination" against him by not arguing it in his initial brief, see Kelly v. Riverside Partners, LLC, 964 F.3d 107, 116 & n.13 (1st Cir. 2020), so we focus on the law about what constitutes arbitrariness and bad faith.

intent, purpose, or motive, and [b]ad faith encompasses fraud, dishonesty, and other intentionally misleading conduct." <u>Good Samaritan Med. Ctr.</u> v. <u>NLRB</u>, 858 F.3d 617, 630 (1st Cir. 2017) (alteration in original) (internal quotation marks omitted) (quoting <u>Spellacy</u> v. <u>Airline Pilots Ass'n-Int'l</u>, 156 F.3d 120, 126 (2d Cir. 1998)).

"Any substantive examination of a union's performance . . . must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." <u>O'Neill</u>, 499 U.S. at 78; <u>see also</u> <u>Emmanuel</u>, 426 F.3d at 420 ("[T]he reviewing court must accord the union's conduct substantial deference[,] . . . [and t]his standard of review recognizes that unions must have ample latitude to perform their representative functions."); <u>Miller</u>, 985 F.2d at 12 ("We also allow the union great latitude in determining the merits of an employee's grievance and the level of effort it will expend to pursue it.").

Bryan has not presented evidence of either arbitrariness or bad faith, and the summary judgment record makes it quite clear that he has not made out a case for breach of the duty of fair representation.[3] Bryan mischaracterizes clear law on what

---

[3] At oral argument for this appeal, Bryan's counsel made clear that he is not bringing a duty of fair representation claim based on the various unions' failure to pursue Bryan's grievance to arbitration. Rather, the duty of fair representation claim is

constitutes both arbitrariness and bad faith. "The duty of fair representation mandates that a union conduct at least a 'minimal investigation' into an employee's grievance," but "only an 'egregious disregard for union members' rights constitutes a breach of the union's duty' to investigate." Emmanuel, 426 F.3d at 420 (first quoting Garcia v. Zenith Elecs. Corp., 58 F.3d 1171, 1176 (7th Cir. 1995); and then quoting Castelli v. Douglas Aircraft Co., 752 F.2d 1480, 1483 (9th Cir. 1985)); see also Vaca, 386 U.S. at 191 ("[W]e accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion . . . .").

APA more than satisfied its duty to conduct at least a "minimal investigation" into Bryan's grievance. It is undisputed that APA brought in former USAPA representatives to review the grievances APA had inherited from USAPA, and APA relied on these former USAPA representatives to provide recommendations as to the merits of those grievances. At least one of these former USAPA representatives had previously reviewed Bryan's grievance and determined that it lacked merit, including it on a table of old USAPA grievances that had been designated as candidates for withdrawal which was provided to APA. These representatives also

---

based only on APA's purportedly inadequate investigation as to the merits of Bryan's grievance and decision to withdraw the grievance without Bryan's participation. We analyze only that claim.

unanimously recommended that Bryan's grievance be withdrawn by APA. APA's reliance on the expertise of these former USAPA representatives in choosing to withdraw Bryan's grievance did not reflect an "egregious disregard" for Bryan's rights, Emmanuel, 426 F.3d at 420 (quoting Castelli, 752 F.2d at 1483), and Bryan cites no controlling case law which suggests that APA's review process here was not at least a minimally adequate investigation.

Bryan posits that the experts on which APA relied were required by the duty of fair representation to truly be experts, including being familiar with the particular collective bargaining provision at issue in Bryan's grievance and understanding the nature of the grievance. Without accepting this contention, even so, mere negligence or erroneous judgment does not constitute a breach of the duty of fair representation. Miller, 985 F.2d at 12. The USAPA representatives were at least more familiar with the former USAPA grievances and applicable collective bargaining agreement than was APA. We must afford substantial deference to the decision not to pursue the grievance further to arbitration. See O'Neill, 499 U.S. at 78; Emmanuel, 426 F.3d at 420; Miller, 985 F.2d at 12. Two bankruptcies, a change in unions, a 400-case backlog, and the passage of almost two decades reasonably explain why APA did not need to do more to investigate a claim that the predecessor union had several times marked for dropping after the airline had rejected it.

In addition, Bryan presents no evidence that APA, or the former USAPA representatives on which it relied, acted in bad faith in reviewing Bryan's grievance or that APA acted in bad faith in withdrawing it. Bryan has presented no evidence that anyone from APA ever told him that his grievance had merit or that the union would pursue it through arbitration. Bryan was told the name of the APA agent to contact if he had any questions regarding the withdrawal of his grievance. It was his choice not to contact that agent.

Nor was APA under an obligation to give him even more notice than he was given of its decision not to pursue his grievance to arbitration. Bryan argues that he had a right to pursue his grievance individually "at his own expense," and that the failure of APA to notify him sooner deprived him of that opportunity. Bryan has cited no controlling authority for the proposition that an employee has an individual right under the RLA to pursue a grievance against his employer where the employee's certified representative has declined to pursue that grievance, nor has he explained why such a right exists under the statute. Cf. Vaca, 386 U.S. at 191 (holding that, under the LMRA, an "individual employee has [no] absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement"); id. at 194-95; Plumley v. S. Container, Inc., 303 F.3d 364, 374-75 (1st Cir. 2002) (applying

LMRA); <u>Miller</u>, 985 F.2d at 12 (citing <u>Vaca</u>, 386 U.S. at 191). To the extent that such a right exists under the RLA, we reject that it was violated on these facts because Bryan was notified of the withdrawal of his grievance and given an opportunity to contact an APA agent about his grievance more than a week before the Global Settlement Agreement became final. That he chose not to contact that agent about his grievance despite having more than a week to do so defeats his claim that he was entitled to more notice.

### III.

We hold that APA did not breach its duty of fair representation under the RLA. Based on Bryan's concession at oral argument, we also hold that Bryan cannot maintain a claim against American Airlines. The judgment of the district court is <u>affirmed</u>.